KEYSTONE CONSOLIDATED INDUSTRIES, INC., Plaintiff-Appellee, *v.* ROBERT H. ALLPHIN, Director of Revenue *et al.*, Defendants-Appellants.

Third District   No. 76-117

Opinion filed February 4, 1977.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants.

Davis, Morgan & Witherell, of Peoria (Stephen D. Gray, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The Illinois Department of Revenue and its director, Robert H. Allphin, appeal from an injunction against the assessment of a use tax upon oxygen and nitrogen supplied to plaintiff Keystone Consolidated Industries, Inc., by Chemetron.

Before taking up the substantive questions presented by this appeal, we must first consider the Department's contention that Keystone should be precluded from equitable relief because of a failure to exhaust administrative remedies. The Department audited Keystone's books and then informed Keystone that all payments to Chemetron for gaseous oxygen and nitrogen were subject to the Illinois Use Tax and that use taxes of $12,008.64 were due for the three-year period from September 25, 1969, to September 25, 1972. On October 22, 1973, Keystone filed this action for an injunction. The Department filed a motion to dismiss the suit for Keystone's failure to exhaust its administrative remedies under the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.1 *et seq.*) and the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, pars. 264-279). The motion to dismiss was denied on December 6, 1973, and the final

judgment order was entered on January 6, 1976, declaring that the performance of Chemetron did not constitute the sale of tangible personal property and enjoined the Department from assessing a use tax against plaintiff.

At the time the circuit court denied the motion to dismiss, an injunction to prevent the collection of illegal taxes was recognized as an exception to the general rule requiring exhaustion of administrative remedies before judicial relief can be sought. (*Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 52 N.E.2d 177.) On March 24, 1975, the Illinois Supreme Court ruled that the *Owens* exception to the exhaustion of remedies doctrine was no longer applicable, and instead the exhaustion doctrine was extended to illegal tax cases in furtherance of the public policy effected by the Administrative Review Act. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) In *Illinois Bell,* after overturning the *Owens* exception, the court nevertheless proceeded to decide the case on the basis of *Owens* because *Bell* had relied upon *Owens* in seeking equitable relief.

The supreme court again refused to give retrospective application to its Illinois Bell decision in *Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330, 356 N.E.2d 67, where at the time the trial court enjoined collection of taxes under the Retailers' Occupation Tax Act, the authority of *Owens* was as yet undisturbed. Under such circumstances the court chose to decide the merits of the case on the basis of *Owens*.

■■ A similar situation exists in the case at bar. The trial court denied the Department's motion to dismiss, which was based on the exhaustion doctrine, before *Illinois Bell* had overruled *Owens*. That decision was correct at the time. Although the decision on the merits in this case was rendered a few months after the *Illinois Bell* ruling, the propriety of seeking injunctive relief without exhausting administrative remedies was no longer an issue. In our judgment, since Keystone relied upon *Owens* in seeking equitable relief from impending tax liability, fundamental fairness requires application of the *Owens* rule in this case just as in *Illinois Bell* and *Sta-Ru Corp.* Therefore, we hold that the trial court properly exercised its equitable jurisdiction in this cause.

Turning to the merits of this appeal, we must set forth the factual background of the dispute. Keystone contracted with Chemetron for the construction and operation of a plant to produce gaseous oxygen and nitrogen on the premises of Keystone's steel and wire plant in Peoria. The gases are produced by processing the air obtained from above and around the Chemetron plant. Chemetron agreed to sell only to Keystone. Under a series of agreements Keystone is obligated to pay $14,000 per month as a "facility charge," an additional monthly storage charge of

$2,000 after January 1, 1972, and $.025 per 100 cubic feet of gaseous oxygen and nitrogen used up to plant capacity.

After the Department's audit of Keystone's books and records, the auditor informed Keystone that all payments to Chemetron were subject to the use tax. Keystone disputed its tax liability, contending that its purchase of service from Chemetron does not constitute the purchase of tangible personal property at retail within the meaning of the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.3). Keystone's theory is that Keystone has the right to use the air above its Peoria premises from which Chemetron separates the oxygen and nitrogen, and therefore there is no transfer of property ownership but merely a sale of services. In support of this theory Keystone argues that ordinary air, the sole raw material used by Chemetron, has no value, and hence the only value of the gases produced is attributable to the services performed by Chemetron. Keystone attempts to draw an analogy between its right to use the air and the right of riparian owners to use adjoining water, and cites *Bouris v. Largent* (3d Dist. 1968), 94 Ill. App. 2d 251, 236 N.E.2d 15, and *Washington Ice Co. v. Shortall* (1881), 101 Ill. 46, two cases involving property rights of riparian owners.

The heart of the matter is the contractual arrangement between Keystone and Chemetron. Keystone acknowledges that in parts of the contract "the language of purchase and sale of certain products is used, which could imply that the agreement is one for the purchase of tangible personal property." (Appellee's Brief, at 19.) But Keystone analyzes the agreement in total and reasons that it actually is a lease-service arrangement whereby Chemetron leases the plant from Keystone and thus functions as a "serviceman" as defined by Service Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.31 *et seq.*).[1]

The introductory paragraph of the contract provides:

" * * * Buyer hereby agrees to purchase from Seller, the Buyer's requirements of the products hereinafter defined * * *."

Another provision requires the seller (Chemetron) to pay to the buyer (Keystone) $1.00 per year as rental for one acre of land on which Chemetron agrees to construct its "oxygen and nitrogen producing plant." The price schedule uses the term "monthly purchases." Of special interest is paragraph No. 10 of the 1970 revised agreement which provides:

"If, while this Agreement is in effect, Buyer shall request Seller to supply quantities of oxygen or nitrogen in excess of the gaseous capacity of Seller's plant located upon the leased premises, Seller

---

[1] Since the service use tax is measured by the cost price to the serviceman of property transferred as an incident to the sale of service, Keystone figures there would be no tax liability under that tax either because the air was free.

agrees that it will sell such additional quantities to Buyer at a price of Twelve Cents ($0.12) per one hundred cubic feet and will supply these additional quantities as available, from other of Seller's producing facilities."

Under this provision Chemetron could be required to furnish oxygen and nitrogen produced from air above some plant other than Keystone's. We find that the clear intent of the parties, as indicated by the plain language of the contract is for Chemetron to produce and sell and Keystone to buy the oxygen and nitrogen needed by Keystone. Once oxygen and nitrogen have been separated from the atmosphere, they become valuable commercial products capable of being sold and taxed, and are so treated in the contract.

We have no quarrel with the notion that Keystone has the right to use the air above its premises, just as it has the right to mine the minerals under its property. In this case, however, Keystone had no industrial use for the air in its natural state and so it agreed to permit Chemetron to process the air to extract oxygen and nitrogen which Keystone then purchased as needed. Similarly, Keystone might lease its mineral rights to a mining company and buy from it the coal extracted from the mine. We think it obvious that Chemetron owns the oxygen and nitrogen produced in its plant until such time as the gases are sold to Keystone. In fact, the contract provides that Chemetron is to pay all personal property taxes on the products located on the leased premises. This provision is another indication that the transfer of oxygen and nitrogen is intended to be a transfer of ownership of the products. The gases are tangible personal property and as such are subject to the use tax.

One final question remains to be considered. The Department argues that the facility and storage charges, totaling $16,000 monthly, are included in the selling price which is the measure of Keystone's use tax liability. The Use Tax Act, section 2 (Ill. Rev. Stat. 1975, ch. 120, par. 439.2), defines "selling price" as "the consideration for a sale valued in money * * * and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or *any other expense whatsoever* * * *." (Emphasis added.) In construing this provision, it has been held that delivery charges separately contracted for are an element of the sellers' cost of doing business and as such are subject to the tax. (*Gapers, Inc. v. Department of Revenue* (1st Dist. 1973), 13 Ill. App. 3d 199, 300 N.E.2d 779.) Also, the 15 percent "service charge" added to charges for food and drinks at the Chicago Playboy Club was held taxable partly because the services rendered by the "bunnies" (delivery of food and drinks) were incidental to the transfer to the purchaser of the articles sold. *Cohen v. Playboy Clubs International, Inc.* (1st Dist. 1974), 19 Ill. App. 3d 215, 311 N.E.2d 336.

■■ The plain language of the statute is clear. No reimbursement of any of the seller's expenses whatsoever may be deducted from the selling price in computing use tax liability. In construing section 2, the supreme court has said, "These words are all-embracing in their scope." (*Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, 172, 39 N.E.2d 1006, 1008.) Here the facility and storage charges are for the purpose of compensating Chemetron for some of the costs of producing and storing the oxygen and nitrogen supplied to Keystone. Under the statute, these charges are a part of the selling price.

For the reasons given, the judgment of the Circuit Court of Peoria County is reversed.

Reversed.

STOUDER, P. J., and SCOTT, J., concur.