LAKE VIEW MEMORIAL GARDENS, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fifth District   No. 5—83—0495

Opinion filed April 17, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Robert L. Jennings, of Jennings, Tedesco, Flynn & Guymon, of Belleville, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Lake View Memorial Gardens, Inc. (Lake View), brought the instant action for administrative review of a decision by the Illinois Department of Revenue (Department) that Lake View was liable for retailers' occupation tax (see Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*) on its sales of burial vaults. The trial court reversed the Department's decision, finding that the sales of burial vaults were incidental to the plaintiff's sales of interment services and were, therefore, not taxable. On appeal the Department contends that the plaintiff's activity of selling burial vaults was separable from its activity of providing interment services and that the plaintiff was thus liable for tax on the sales of the vaults as tangible personal property. We agree and accordingly reverse the judgment of the trial court.

The plaintiff, Lake View, is a not-for-profit, federally tax-exempt corporation that operates a cemetery in Belleville, Illinois. In addition to selling burial lots, the plaintiff provides concrete containers, or bur-

ial vaults, to house caskets for burial purposes.

The Department issued a notice of tax liability against Lake View for retailers' occupation tax of $7,208.64 on its sales of burial vaults from January 1976 through March 1979, and a hearing was held pursuant to protest by the plaintiff. At the hearing David Tognarelli, an auditor for the Department, testified that he had audited the plaintiff and had found that the plaintiff, when contracting with purchasers of cemetery lots, had also sold burial vaults without charging tax on the sale price of the vaults. These vaults had been fabricated by the plaintiff above ground, and concrete had not been poured directly into the graves. Mr. Tognarelli stated that he had assessed a tax based upon the purchase price of the vaults but had given the plaintiff credit for tax that had already been paid on the cost of sand and other material used in making the vaults.

Loran Glock, manager of Lake View, testified that it is Lake View's business to provide suitable space for the interment of deceased human beings and to maintain the burial site perpetually. According to Mr. Glock, it is necessary to the proper maintenance of a burial site that the casket be placed in a concrete vault to prevent the grave site from caving in when it rains. In order to keep maintenance costs reasonable, the plaintiff's rules require that every interment be made with a concrete or steel burial vault. Thus, Mr. Glock stated, the plaintiff manufactures concrete vaults and makes them available to its customers at cost so as to make compliance with this requirement as easy as possible.

Mr. Glock testified further that the concrete vaults are sold only to lot owners on a "pre-need" basis and are not sold to the public at large. He stated, however, that families who purchase lots from Lake View are free to purchase the required vaults from a funeral director or other source, as Lake View is "not in the vault business." According to Mr. Glock, the average charge for interment rights at present is $300, and the purchase price of a burial vault is $200. These two figures would be listed separately on a sales contract rather than being stated as a lump sum covering both the interment rights and the burial vault. The reason for this is to give the lot owners the option of buying a permanent container from whomever they wish. The plaintiff's records showed that in 1978 it sold 184 vaults at an average price of $76.84 per container for a total amount of $14,140.

Harry Bloomer, an administrative assistant for the plaintiff, testified that the use of concrete vaults in the cemetery greatly reduces the maintenance required for a burial lot because it eliminates the need for filling in, resodding and reseeding the ground in case the

grave sinks in. He stated that as far as he knew there was no other useful purpose for the concrete containers sold by the plaintiff. In response to questioning by the defendant, Mr. Bloomer acknowledged that the cost of care and maintenance of a burial site is the same regardless of whether the permanent container used is furnished by the plaintiff or purchased from another source. The proceeds from the sales of the vaults are kept by the plaintiff in a separate fund, and no part of the fund is used to cover the cost of maintenance.

Following the hearing, the Department adopted the hearing officer's recommendation that the assessment against the plaintiff be upheld. This recommendation was based upon a determination that the Department's rules regarding funeral directors and vendors of memorial stones evidenced a regulatory intent to tax the sales of the vaults even though these sales had been incorporated into a burial service. The hearing officer concluded, therefore, that the plaintiff's sales of burial vaults were subject to retailers' occupation tax despite the fact that the plaintiff operated a cemetery rather than a funeral parlor.

Upon administrative review the trial court reversed the Department's decision and entered judgment for the plaintiff. In an extensive memorandum of judgment, the court found that the plaintiff's "real" occupation was the selling of interment rights and that the sales of burial vaults were a necessary part of this service and thus incidental to the primary business of the plaintiff. The court stated:

> "In the case at bar, the article sold, the concrete vault, has absolutely no value to the purchaser except as a necessary part of the services rendered by Lake View. In no way can the vault sales be construed to be the substance of the transaction. Rather, the sales of the vaults are merely incidental to Lake View's service of providing suitable internment [sic] space."

On appeal from this judgment the Department contends that the trial court misapplied the principles set forth by our supreme court for determining when a vendor is engaged in the business of selling at retail so as to be subject to retailers' occupation tax. In particular, the Department asserts, the court failed to recognize that the plaintiff was engaged in two separable activities: the taxable selling of vaults at retail and the nontaxable furnishing of interment and maintenance services. The Department maintains that since the value of the vaults sold by the plaintiff was readily ascertainable apart from the value of the services rendered, and since the plaintiff's maintenance services failed to affect or enhance the value of the vaults, the plaintiff came within the rule providing for taxation of a part of a taxpayer's business involving the sale of personal property, even when that sale is

carried on in connection with or in aid of another part of the taxpayer's business that is itself exempt from tax.

Under the Retailers' Occupation Tax Act, at issue in this appeal, a tax is imposed upon "persons engaged in the business of selling tangible personal property at retail ***." (Ill. Rev. Stat. 1981, ch. 120, par. 441.) This tax is an occupation tax, imposed for the privilege of conducting a retail business, and is not a tax upon sales. (*Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877.) Thus, not all sales of personal property sold at retail for "use or consumption, and not for the purpose of resale" (Ill. Rev. Stat. 1981, ch. 120, par. 440) are subject to tax under the Act, as such sales may be an inseparable part of a special service rendered the purchaser. In that case, "the occupation of the vendor is that of furnishing service, and he is not engaged in the business of selling, since he does not undertake to sell any articles except those necessary and incidental to the service rendered the purchaser; ***." *Snite v. Department of Revenue* (1947), 398 Ill. 41, 45, 74 N.E.2d 877, 879.

Because the tax applies only to the business of selling tangible personal property at retail and not to the business of furnishing service, questions calling for the characterization of a taxpayer's business have frequently arisen. (*Sterling Steel Casting Co. v. Department of Revenue* (1955), 7 Ill. 2d 244, 130 N.E.2d 262.) In *Snite v. Department of Revenue* (1947), 398 Ill. 41, 46, 74 N.E.2d 877, 879-80, the supreme court set forth the applicable rules for determining when a vendor is engaged in the business of selling at retail. The court stated:

> "If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail, and the tax which he pays for the privilege of engaging in such business is measured by the price which the purchaser pays for the article and the service incident thereto."

The court continued, however, that

> "[i]f the service rendered in connection with the article sold does not enhance its value and there is a fixed and ascertainable relation between the value of the article and the value of

the service rendered in connection therewith, then the vendor is engaged in the business of selling at retail and also engaged in the business of furnishing service, and is subject to tax as to the one business and tax-exempt as to the other. [Citation.] A vendor may be engaged in the business of selling at retail within the meaning of the act and taxable because of such occupation, regardless of whether such selling at retail is carried on as his primary business or as an incident or an aid of his primary business. [Citation.]" 398 Ill. 41, 46, 74 N.E.2d 877, 880.

While, in the instant case, the trial court based its decision on the first of these rules in finding that the plaintiff's sales of burial vaults were incidental to its primary business of furnishing interment and maintenance services, we agree with the Department that the plaintiff's business is more properly characterized by the latter rule providing for taxation of a separable part of a taxpayer's business involving the sale of tangible personal property. Two cases cited by the *Snite* court in support of this rule are likewise applicable to the situation at bar. In *Continental Can Co. v. Nudelman* (1941), 376 Ill. 446, 34 N.E.2d 397, the court held that the plaintiff's sales of food items to its employees in conjunction with its nontaxable manufacturing business were subject to tax despite the fact that these sales, made for the employees' convenience and without profit, were a mere incident of the plaintiff's primary business of manufacturing. In considering the statutory language imposing a tax upon "the business of selling tangible personal property at retail," the court stated:

"The sense in which the words 'occupation' and 'business' are used furnishes no basis to support the contention that they do not include a part of the business carried on as an incident or an aid of the primary business. It is only the isolated or occasional sales made by one who does not hold himself out as engaged in the business of selling this tangible personal property at retail that are expressly exempted by the act itself. *** The sales made by appellees were neither isolated or occasional, and there was an evident holding themselves out, at least to their employees, that they were engaged in the business of furnishing meals." 376 Ill. 446, 449, 34 N.E.2d 397, 398.

Similarly, in *Ahern v. Nudelman* (1940), 374 Ill. 237, 29 N.E.2d 268, the court held that a part of the taxpayer's business involving the sale of personal property was subject to tax although carried on in connection with other nontaxable service activities. The taxpayer was a funeral director who provided caskets, burial vaults, graveclothing and flowers as part of its service of conducting a funeral. The court

distinguished cases cited by the taxpayer in which the sales involved were exempt from tax as an inseparable and incidental part of the services rendered. In those cases, the court stated,

> "it was the skill or service that was bargained for and the property incidentally delivered had a value only as a result of such skill or service. There was no fixed or ascertainable relation between the value of the skill and the property to which the skill was applied to make it serviceable. In that respect such cases differ from the present one where the casket, vault or clothes always have a fixed or definitely ascertained price. In the case of caskets the wholesaler has a definite price which is used by the funeral director to fix a combined price for the property and service to his customer. The skill and service of the director does not enhance the value of the casket or render it more or less suitable for its purpose. *** None of the cases cited by appellants goes so far as to hold that identified articles of tangible personal property procured from a wholesaler for resale and transferred in the same form by a retailer for use or consumption, render the latter non-taxable merely because service is rendered in connection with the resale, which does not in any manner change the tangible character of the goods transferred." (374 Ill. 237, 240-41, 29 N.E.2d 268, 269-70.)

The court concluded, therefore, that the funeral director who "transfer[red] for use a casket as a tangible article of personal property, and also [sold] service incidental to the use of the casket" (374 Ill. 237, 241, 29 N.E.2d 268, 270) was engaged in two separable activities of selling property and rendering service and was thus subject to tax on his sales of the personal property. See also *Massell v. Daley* (1949), 404 Ill. 479, 89 N.E.2d 361; *Terrace Carpet Co. v. Department of Revenue* (1977), 46 Ill. App. 3d 84, 360 N.E.2d 153.

Applying the rule of the *Snite, Continental Can,* and *Ahern* cases to the facts of the case at bar, we find that the plaintiff's sales of vaults came within the two-part test there stated. Here, there was a fixed and ascertainable relation between the value of the vaults sold and the services rendered. According to testimony of the plaintiff's manager, the price of a vault was a predetermined amount based upon the cost of making the vault to the plaintiff. This price was stated separately from the charge for the plaintiff's services. Indeed, the purchaser of interment rights had the option of whether to purchase a vault from the plaintiff or someone else, and the amount he paid was determined accordingly. Moreover, unlike those situations in which the property concerned derived its value as a result of the ser-

vices performed (see, *e.g., Dow Chemical Co. v. Department of Revenue* (1962), 26 Ill. 2d 283, 186 N.E.2d 333 (value of chemicals used in oil well treatment dependent upon plaintiff's skill and knowledge); *Ingersoll Milling Machine Co. v. Department of Revenue* (1950), 405 Ill. 367, 90 N.E.2d 747 (no tax on sale of custom milling machine manufactured through skilled engineering services of plaintiff); *Babcock v. Nudelman* (1937), 367 Ill. 626, 12 N.E.2d 635 (lenses and frames furnished by optometrist incidental to professional service rendered)), the plaintiff's maintenance and burial services did not enhance the value of the vaults. Rather, the value of the vaults as permanent burial containers remained the same regardless of whether they were used in connection with the plaintiff's services. The plaintiff, therefore, was engaged in the business of selling tangible personal property at retail so as to be liable for retailers' occupation tax on the sales of the vaults.

This result obtains despite the fact, as the trial court found, that it was necessary to the maintenance of the grave sites that concrete burial vaults be used. While the plaintiff required the use of such vaults in order to provide proper maintenance services, the vaults could be obtained from any source, and the plaintiff sold vaults merely as an accommodation to its customers. Thus, with regard to its sales of vaults, the plaintiff was in the same position as another vendor of vaults such as an undertaker or vault company. Since the plaintiff's maintenance services took place regardless of whether the burial vaults were obtained from it or from others, its sales of vaults were not a necessary part of the services rendered but were, rather, a separable activity subject to tax.

Under the reasoning of *Continental Can Co. v. Nudelman* (1941), 376 Ill. 446, 34 N.E.2d 397, the plaintiff's sales of burial vaults were taxable even though they were an incident of the plaintiff's primary occupation of furnishing burial and maintenance services. From the record it appears that the vaults were made available to all purchasers of interment rights and that the plaintiff's sales constituted a regular part of its business. Thus, while a determination of taxability cannot be made solely on the basis of the quantity of personal property sold (*American Brake Shoe Co. v. Department of Revenue* (1962), 25 Ill. 2d 354, 185 N.E.2d 192), it is evident that the plaintiff held itself out to its customers as a seller of burial vaults and that its sales were more than isolated or occasional sales entitling it to an exemption under the Act.

We find support for the result reached here in the Department's rule regarding the liability of funeral directors for retailers' occupa-

tion tax, which was approved by the supreme court in *Ahern v. Nudelman* (1940), 374 Ill. 237, 29 N.E.2d 268. Rule 8 states in pertinent part:

> "A funeral director is engaged in the business of selling tangible personal property to purchasers for use or consumption when he sells such items of tangible personal property as caskets, *grave vaults*, grave clothing and flowers to purchasers for use or consumption, and he is required to remit retailers' occupation tax to the Department on his gross receipts from such sales. This is true even though he makes such sales as a part of a funeral." (Emphasis added.)

While the trial court found that this rule was inapplicable to the instant case because the plaintiff's sales of vaults were "a necessary incident" of the plaintiff's service of maintaining grave sites, we have seen that there was nothing in the nature of the plaintiff's service that changed the character of the vaults as tangible personal property. Moreover, the fact that the plaintiff's vaults were sold at cost rather than for a profit, as in the case of funeral directors, is of no import, as liability for retailers' occupation tax does not depend upon the existence of profit from a sale. (*Time, Inc. v. Hulman* (1964), 31 Ill. 2d 344, 201 N.E.2d 374.) Since the vaults sold by the plaintiff served the same function as those sold by others for a profit, the plaintiff's sales of vaults, like those of funeral directors under Rule 8, constituted sales of tangible personal property so as to be subject to retailers' occupation tax.

For the reasons stated in this opinion we reverse the judgment of the trial court and reinstate the Department's assessment of liability against the plaintiff.

Reversed.

WELCH, P.J., and HARRISON, J., concur.