AIRCO INDUSTRIAL GAS DIVISION, THE BOC GROUP, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District    No. 4—91—0313

Opinion filed December 30, 1991.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellant.

H. Randolph Williams and Michael J. Garvey, both of Baker & McKenzie, of Chicago, and Patrick V. Reilly, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 20, 1988, defendant Illinois Department of Revenue (Department) issued plaintiff Airco Industrial Gas Division, the BOC Group, Inc., a notice of tax liability assessing a deficiency which included $227,192 plus penalties and interest thereon, under the Retailers' Occupation Tax Act (Act) (Ill. Rev. Stat. 1989, ch. 120, par. 440 *et seq.*). The assessment covered a period from January 1, 1982, to December 31, 1986. On June 20, 1990, plaintiff filed a complaint in the circuit court of Sangamon County for administrative review (Ill. Rev. Stat. 1989, ch. 110, par. 3—104) of the Department Director's decision of April 5, 1990, to adopt the assessed deficiency under the Act. The circuit court reversed and the Department appeals. We affirm.

The parties have stipulated to the following facts. Plaintiff is engaged in the business of selling industrial gases, which are manufactured in either gaseous or liquid form. The liquid gases, which are pertinent here, are manufactured on plaintiff's premises and must be stored at temperatures below zero Fahrenheit to remain in liquid form. In order for plaintiff's customers to take possession of liquid gases, they must have insulated storage facilities on their premises. Plaintiff's customers primarily use the liquid gases in their manufacturing operations. If the customers need to use the liquid gases in a gaseous form, they must have vaporizing equipment on their property to convert the liquid gas to a gaseous form.

Plaintiff's customers can either purchase their own storage tanks and/or vaporizing equipment, or rent the equipment from plaintiff. If a customer rents the equipment from plaintiff, they must pay plaintiff an additional facility fee. Plaintiff utilizes a bulk product agreement

for the purchase of their liquid industrial gases and the rental of their storage and/or vaporizing equipment. The bulk product agreement contains two separately negotiated prices. One price is for the purchase of the liquid gas, which is a standard unit price on the quantity of the liquid gas. The other price is a facility fee for the rental of the storage and/or vaporizing equipment. The bulk product agreement provides that if a customer rents storage and/or vaporizing equipment from plaintiff, plaintiff retains title to that equipment. In addition, the agreement provides that plaintiff reserves the right to substitute equipment for the equipment already located on the customer's premises, and the right to remove all equipment at the termination of the agreement.

The retailers' occupation tax (ROT) assessment in question here was based on $4,938,960 of facilities fees which plaintiff collected from its customers during the assessment period.

On May 10, 1988, plaintiff protested the assessment of a deficiency, which included the ROT assessment. A hearing was held before an administrative law judge (ALJ). Thomas F. Sullivan, plaintiff's regional manager of administration, testified at the hearing as follows: (1) the customer is charged for the industrial gas at the time of delivery ; (2) the facility fee is billed monthly; (3) the facility fee is not dependent upon the quantity of liquid gas purchased, but strictly on the contracted price; (4) plaintiff utilizes a facilities fee schedule which stipulates the rental per month for each size storage system, and the rental per month for the vaporizing equipment; and (5) 30% of plaintiff's sales are for carbon dioxide, and because of a prior antitrust judgment, it utilizes separate contracts for the sale of that gas and for the rental of storage equipment.

Sullivan also testified: (1) if a customer purchases liquid gas from plaintiff, the customer must either purchase its own storage equipment or rent from plaintiff; (2) the customer can purchase the storage equipment from an outside vendor; (3) the customer cannot rent storage equipment from any other vendor but must rent the equipment from plaintiff to ensure product quality; (4) plaintiff does not manufacture storage tanks, but purchases the equipment from outside vendors; (5) plaintiff cannot sell liquid gas to a customer who does not have the special storage tank available on its premises; and (6) the facilities fees are based on plaintiff's cost of the storage tanks and/or vaporizing equipment.

The sole issue here is whether the facilities fees charged by the plaintiff for the rental of storage equipment and/or vaporizing equipment are subject to the ROT. Section 2 of the Act imposes a tax

"upon persons engaged in the business of selling tangible personal property." (Ill. Rev. Stat. 1989, ch. 120, par. 441.) The tax is measured by gross receipts from the sales. (Ill. Rev. Stat. 1989, ch. 120, par. 441.) Section 1 of the Act provides that " 'Gross receipts' from the sales of tangible personal property at retail means the total selling price or the amount of such sales." Ill. Rev. Stat. 1989, ch. 120, par. 440.

The Department argues that the definition of "selling price" or "amount of sale" provided in section 1 of the Act is dispositive. Section 1, in part, provides:

> " 'Selling price' or the 'amount of sale' means the consideration for a sale valued in money whether received in money or otherwise *** and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or *any other expense whatsoever* ***." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 120, par. 440.

The Department points out that plaintiff is singularly engaged in the business of selling liquid industrial gases and, in order to complete a sale of that product, plaintiff must rent storage tanks and/or vaporizing equipment to those of its customers who do not own their own equipment. Accordingly, the Department maintains the facilities fees plaintiff charges those customers are actually reimbursements for expenses it incurs in selling them gas. The Department then asserts that under those circumstances, plaintiff cannot properly deduct those facilities fees from the total charges obtained from those customers for the gas and the use of the equipment in determining its revenue subject to the Act, but those fees must be included in its ROT base. Under this theory, plaintiff is wrong in treating the facilities fees as revenues derived from an independent service provided to its customers.

The Department contends the findings of the ALJ were correct. She found that the facilities fees charged plaintiff were not "rental" fees "but rather separately stated costs to reimburse [plaintiff] for certain expenses necessary to sell its product." The ALJ concluded plaintiff's "customers are buying tangible personal property in an incomplete form that mandates [plaintiff] maintain storage tanks and/or vaporizing equipment on customer premises in order to complete the transfer of a useable product."

The Department maintains the instant case is analogous to a line of cases where charges for certain services provided in conjunction with the sale of tangible personal property, and which were separately charged to the customer, were found to be a cost of completing the sale which should be included in the vendor's taxable gross receipts.

For example, in *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, 300 N.E.2d 779, a caterer, who arranged parties at the homes of his customers, deducted the cost of transporting the food and equipment to its customers' homes from his gross receipts. The transportation costs were negotiated for separately from the customer's other costs and were separately shown on the caterer's invoices.

On review, the circuit court upheld the Department's assessment under the Act on the caterer's revenues from transportation charges. The appellate court affirmed. The *Gapers'* court noted that the caterer not only agreed to prepare the food, but also agreed to carry out the contract at the customer's home. Under those circumstances " 'the delivery becomes as important to the seller as to the buyer; it becomes an inseparable link in the chain of events leading to the completion of the sale of meals to purchasers and not merely incidental to the purpose of the [caterer's] business.' " *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.

Plaintiff argues *Gapers* is distinguishable, because the court there based its conclusion on the parties' contract, which also required that the caterer prepare the meals and perform the contract in the customer's home. Plaintiff claims, here, it agreed only to deliver the liquid gas to its customers' premises, and to be analogous to *Gapers* plaintiff would have had to agreed to provide industrial gas to the customer in a form ready for use, rather than in a storable liquid form.

In *Velde Ford Sales, Inc. v. Department of Revenue* (1985), 136 Ill. App. 3d 589, 483 N.E.2d 721, a motor vehicle retailer furnished its customers with a service where it would prepare and deliver to the Secretary of State the customer's application for license plates and a title certificate. The customer had the option of applying to the Secretary of State himself. The motor vehicle retailer failed to include the charges for the above service in the amount of its gross receipts, upon which the ROT was calculated. On administrative review, the circuit court reversed the decision of the Department which upheld the assessment of a tax liability on those services under the Act. This court reversed the circuit court. On appeal, the motor vehicle retailer argued that the application service was an independent nontaxable service furnished to its customers after the sale of the automobile. The Department maintained that the application service was an integral part of the sales, and revenues derived from the service should be included in the sales price.

There, the Department relied on the decision in *Gapers* to support its position that the vehicle retailer's revenues should be subject to taxation under the Act. This court noted the motor vehicle retailer was not attempting to deduct sales expenses from the sales price, as in *Gapers*, but was merely charging its customers for a service made available to them. Nevertheless, this court deemed the situation more analogous to *Gapers* than to those decisions where taxable sales of tangible personal property were found to exist in conjunction with independent nontaxable services. This court concluded the application service was substantially " ' "an inseparable link in the chain of events" ' " involved in the sale of automobiles, even though the service was provided after the sales of the automobiles were concluded. *Velde*, 136 Ill. App. 3d at 591, 483 N.E.2d at 723, quoting *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.

This court's decision in *Velde* was based, in part, on certain sections of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, pars. 3—104(b), 3—113(a)), which imposed substantial responsibility upon motor vehicle retailers to aid the automobile purchasers in the application of license plates and title certificates. Consequently, this court concluded that at least some of the fees charged for the application service was for service the motor vehicle retailer was required to perform.

In *Keystone Consolidated Industries, Inc. v. Allphin* (1977), 45 Ill. App. 3d 714, 359 N.E.2d 1202, Keystone contracted with Chemetron to build an on-site plant to provide Keystone with industrial gases. The gas was produced on Keystone's premises by a system built and owned by Chemetron. Keystone paid Chemetron $14,000 in facility charges on a monthly basis, and a $2,000 storage charge in addition to a base price of $0.025 per 100 cubic feet of industrial gas. After concluding the contract was for a sale of tangible personal property, the *Keystone* court considered the question of whether the separately stated facility charges and storage charges should be included in the taxable selling price under section 2 of the Use Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 439.2). This section of the Use Tax Act contains the exact language of section 1 of the Act, prohibiting the deduction of expenses from the "selling price." The *Keystone* court concluded the charges were part of the taxable selling price and noted: "Here the facility and storage charges are for the purpose of compensating Chemetron for some of the costs of producing and storing the oxygen and nitrogen supplied to Keystone. Under the statute, these charges are a part of the selling price." *Keystone*, 45 Ill. App. 3d at 719, 359 N.E.2d at 1205.

Plaintiff maintains the instant case is distinguishable from *Keystone* because *Keystone* did not involve a merchant customer, but rather an on-site customer. In addition, Chemetron did not sell and deliver the industrial gases to Keystone, but produced and stored the gases on Keystone's property.

Plaintiff argues that the instant case is more analogous to those decisions where sales provided in conjunction with nontaxable services were deemed sufficiently independent of the nontaxable services to be taxed under the Act. In *Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877, the court concluded that the operator of a country club was, in addition to providing social services, engaged in the business of selling food and drink to the members, and those revenues derived from the sales were subject to the Act. The court noted:

> "If the service rendered in connection with the article sold does not enhance its value and there is a fixed or ascertainable relation between the value of the article and the value of the service rendered in connection therewith, then the vendor is engaged in the business of selling at retail and also engaged in the business of furnishing service, and is subject to tax as to the one business and tax-exempt as to the other." (*Snite*, 398 Ill. at 46, 74 N.E.2d at 880.)

Similarly, in *Lake View Memorial Gardens, Inc. v. Department of Revenue* (1984), 123 Ill. App. 3d 120, 462 N.E.2d 1000, the court found that plaintiff, who primarily provided interment services, was also a retailer as to cement burial vaults. There, the customer could purchase vaults from another source and still obtain plaintiff's interment services.

Plaintiff argues that the "inseparable link" language used in *Gapers* and *Velde* can be applied too broadly and lead to inconsistent decisions. Plaintiff suggests that the best method for distinguishing between a nontaxable service charge rendered in conjunction with the sale of tangible personal property, and taxable services which are essential to the production of the property sold, is to ask, "Can the product that the customer has agreed to buy be sold to the customer without rendering the service?" If "yes," then the service should not be included in the selling price of the sale of tangible personal property.

■ We agree with plaintiff that the most important element of the situation here is that plaintiff's customers are not required to rent equipment from it but can purchase and use their own if they wish. Accordingly, we hold that for this reason no "inseparable link" exists between the sale of the gas and the furnishing of the storage facili-

ties. The closest case to that presented by the situation here is *Velde*, where the customer was not required, as a part of the sales contract, to accept and pay for the title services. However, there, unlike here, the seller was required to make those services available.

We agree with the circuit court that the deficiency should not have been assessed. We affirm the decision of the circuit court setting aside the deficiency assessment.

Affirmed.

STEIGMANN and LUND, JJ., concur.