LIQUID AIR CORPORATION *et al.*, Plaintiffs-Appellants, v. J. THOMAS JOHNSON, Indiv. and as Director, Department of Revenue, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—2988

Opinion filed December 31, 1992.

Schopf & Weiss, of Chicago (Steven A. Weiss and Bradley P. Nelson, of counsel), for appellants.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

The resolution of this dispute turns on the proper construction of certain provisions of the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1989, ch. 120, par. 440 *et seq.*), which imposes a tax upon the gross receipts received by persons who sell tangible personal property at retail. The taxpayers, the Liquid Air Corporation and its subsidiary, the Cardox Corporation, brought this suit to challenge the Department of Revenue's (the Department's) taxation of customer fees collected for the use of storage equipment. The Department decided that the fees were taxable because they constituted an inseparable element of the taxpayers' cost of selling its products. The taxpayers argued that these fees were *bona fide* rental payments which were exempt from taxation under the retailers' occupation tax regulations. (86 Ill. Adm. Code §130.2010 (1986).) Agreeing with the Department of Revenue, the trial court held that the fees in question were taxable, granted summary judgment in favor of the Department, and denied the taxpayers' motion for summary judgment.

We reverse.

BACKGROUND

The taxpayers are in the business of selling industrial gases in liquid form to customers throughout the United States. Because they must be maintained at low temperatures and high pressure, these products cannot be stored in conventional vessels. Instead, the liquid gases are stored in large cryogenic tanks that can sustain the necessary temperature and pressure. Therefore, the taxpayers' customers cannot accept delivery of the liquid gases unless they have the appropriate storage facilities on their premises.

Liquid Air and Cardox provide customers with the option of leasing storage facilities, but they do not require their customers to lease storage facilities exclusively from Liquid Air and Cardox. Customers are free to lease or purchase storage equipment from any vendor they choose. Approximately 25 customers purchase the taxpayers' products without leasing any storage facilities from the taxpayers. A few other customers lease storage facilities from the taxpayers, but do not purchase any product from the taxpayers. Those customers who choose to lease storage facilities from the taxpayers are charged a monthly rental fee, in addition to the price charged for the amount of product purchased.

The price charged for product purchased and the amount of rent charged for the use of storage facilities are negotiated and set separately. The taxpayers' salesmen negotiate the product price with the customer first. Product price is based upon the quality of product purchased, transportation expenses incurred in delivering the product to the customer's location, and market competition. After a customer decides to purchase product from the taxpayers, the salesmen discuss storage facilities. Facility rental fees are calculated based on the cost of the tank, depreciation, maintenance, insurance and taxes.

The taxpayers bill their customers separately for the amount of product purchased and for the facility fees. The facility fee is a fixed amount per month; it is invoiced monthly, in advance. If customers have their own storage tanks, they are not charged a facility fee. Conversely, customers who lease storage tanks from the taxpayers, but purchase products from other suppliers, pay only a monthly facility fee.

In contrast to the monthly facility charge, the taxpayers often bill customers for the product purchased several times per month; product billing is based upon the frequency of product delivery. When no deliveries of product are made during a month, however,

the customer must still pay the monthly facility rental fee for use of the storage tanks.

After conducting an audit of the taxpayers' retailers' occupation tax returns for the years 1982 through 1984, the Department of Revenue issued amended returns assessing a tax liability of $423,524 for the Liquid Air Corporation and $125,433 for the Cardox Corporation. Cardox paid $86,514 of this amount under protest (the amount attributed to tax on facility rental fees), and Liquid Air paid $312,280 under protest. Liquid Air and Cardox have paid additional amounts, under protest, covering retailers' occupation tax on facility rental fees in 1986 and thereafter.

On June 10, 1986, the taxpayers filed a complaint against the defendants alleging, *inter alia,* that the Department of Revenue's assessment of the retailers' occupation tax on facility fees it collected for customer use of storage systems was improper. Both parties filed motions for summary judgment. On October 2, 1990, the circuit court granted the defendants' motion for summary judgment and denied taxpayers' motion.

The Department admitted in the circuit court that some of the facility fees received by the taxpayers should not have been taxed under the retailers' occupation tax. The Department had imposed the tax on all facility rental fees, even on fees for storage of product where the sale of the stored product had not been taxed because of a resale certificate or other exemption. Defendants conceded below that the retailers' occupation tax should not be imposed on facility fees when the purchase of the product is not taxed because of a resale certificate or other exemption. In its final judgment order, the circuit court ordered that these improperly assessed taxes be returned to the taxpayers.

OPINION

The facts are not in dispute. The sole issue before this court is the proper classification of the facility fees collected by Liquid Air and Cardox. If the facility fees are properly classified as a part of the expenses that the plaintiff must incur in order to sell industrial gases, the facility fees are taxable under the Retailers' Occupation Tax Act. On the other hand, if the facility fees are *bona fide* lease payments, the fees are exempt from taxation under the ROTA.

■ The ROTA imposes a 5% tax upon the "gross receipts" obtained by persons engaged in the business of selling tangible personal property at retail. (Ill. Rev. Stat. 1985, ch. 120, par. 441.) A "sale at retail" is defined as "any transfer of the ownership of or

title to tangible personal property to a purchaser, for the purpose of use or consumption." (Ill. Rev. Stat. 1985, ch. 120, par. 440.) The "amount of sale" is the consideration received for the sale "without any deduction [for] the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever." Ill. Rev. Stat. 1985, ch. 120, par. 440.

■ Rental fees and lease payments are expressly excluded from taxation under section 130.2010 of the retailers' occupation tax regulations. Section 130.2010 provides that persons who, under *bona fide* agreements, rent or lease the use of tangible personal property to others are not engaged in the business of selling tangible personal property within the meaning of ROTA, and are not required to remit the retailers' occupation tax on the gross receipts from such transactions. 86 Ill. Adm. Code § 130.2010 (1986).

Recently, the fourth district addressed the application of the ROTA provisions to facility fees like the ones at issue here. (See *Airco Industrial Gas Division, The BOC Group, Inc. v. Illinois Department of Revenue* (1991), 223 Ill. App. 3d 386, 584 N.E.2d 1017.) In *Airco*, the court unanimously held that facility fees are not taxable under the ROTA where customers are *not required* to rent equipment from the industrial gas supplier, but, instead, are free to purchase and use their own equipment. (*Airco*, 223 Ill. App. 3d at 392-93, 584 N.E.2d at 1021.) We believe that *Airco* is dispositive of the issue before the court.

The facts in *Airco* are virtually identical to those in the instant case. In fact, Airco is one of taxpayers' competitors. In *Airco*, as in the present case, the plaintiff was engaged in the business of selling industrial gases which were generally sold in liquid form. The plaintiff's products would only remain in liquid form when stored at temperatures below zero degrees Fahrenheit. Therefore, in order for plaintiff's customers to accept delivery of the liquid gases, they had to have insulated storage facilities on their premises.

Like the taxpayers, Airco gave its customers the option of purchasing their own storage system or renting one from Airco. If the customer rented storage equipment from Airco, it was charged a facility fee in addition to the cost of the liquid gases. Thus, the agreement between Airco and its customers, like the one between the taxpayers and their customers, contained two separately negotiated prices: one price for the purchase of liquid gases, and a separate price for the use of storage equipment.

The facts were not disputed in *Airco*; the sole issue on appeal was whether the facilities fees charged by Airco for the rental of

storage equipment were subject to taxation under the ROTA. (*Airco*, 223 Ill. App. 3d at 387-88, 584 N.E.2d at 1018-19.) In *Airco*, the Department of Revenue made essentially the same argument that it is making now on appeal. The Department asserted that facility fees were actually an inseparable element of Airco's cost of selling industrial gases.

In support of its position in both *Airco* and the case now before the court, the Department of Revenue relied upon *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, 300 N.E.2d 779. In *Gapers*, a caterer attempted to deduct the cost of transporting food and equipment to its customers' homes from his gross receipts. The caterer asserted that because the transportation charges were contracted for separately from the cost of the food, the transportation charges should not be included in gross receipts subject to the retailers' occupation tax. *Gapers*, 13 Ill. App. 3d at 202, 300 N.E.2d at 781.

The *Gapers* court held that the transportation charges were properly included in gross receipts. (*Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.) The court based its conclusion on the fact that the caterer agreed not only to prepare the food, but also to perform the contract at the customer's home. The delivery was "an inseparable link in the chain of events leading to *** the sale of meals" and, therefore, subject to taxation under ROTA. *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.

*Gapers* was distinguished, however, in *Airco*. The *Gapers* court had based its conclusion on the parties' contract, which required the caterer to both prepare meals and perform the contract at the customer's home. In contrast, the plaintiff in *Airco* agreed only to deliver liquid gas to its customers' premises; it did not agree to provide the industrial gas in a form that was ready to use.

The Department of Revenue also relied upon *Velde Ford Sales, Inc. v. Department of Revenue* (1985), 136 Ill. App. 3d 589, 483 N.E.2d 721, in both *Airco* and the case at bar. In *Velde*, an automobile dealer provided its customers with the service of preparing and delivering the customer's application for license plates and a title certificate to the Secretary of State. The customer had the option of preparing his own application or paying the automobile dealer a $25 fee for the service.

The *Velde* court observed that the automobile dealer was not attempting to deduct sales expenses from the sales price, as in *Gapers*. However, the court held that the service was substantially "an inseparable link in the chain of events" involved in the sale of auto-

mobiles, even though the service was provided after the sale of the automobiles was completed. (*Velde*, 136 Ill. App. 3d at 591, 483 N.E.2d at 723, quoting *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.) Therefore, the service was taxable under the retailers' occupation tax.

The *Airco* court also distinguished *Velde*. The *Velde* decision was based in part on certain sections of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, pars. 3—104(b), 3—113(a)), which required motor vehicle retailers to assist their customers with the application procedures for obtaining license plates and title certificates. Because the automobile dealer was required by law to provide these services, no automobile sales could take place unless the dealer made the services available. In contrast, the plaintiff in *Airco* was not required to provide storage facilities for its customers. *Airco*, 223 Ill. App. 3d at 391, 393, 584 N.E.2d at 1020-21.

Finally, the Department of Revenue relied upon *Keystone Consolidated Industries, Inc. v. Allphin* (1977), 45 Ill. App. 3d 714, 359 N.E.2d 1202, in both *Airco* and the present case. In *Keystone*, the plaintiff contracted with Chemetron to build a gas producing plant on Keystone's premises. Chemetron agreed to sell only to Keystone. Keystone agreed to pay Chemetron $14,000 per month in facility fees, a $2,000 storage charge, and $.025 per 100 cubic feet of industrial gas. The Department of Revenue maintained that the facility and storage fees should be included in the selling price of the gas for purposes of determining Keystone's use tax liability. (*Keystone*, 45 Ill. App. 3d at 718, 359 N.E.2d at 1205.) The *Keystone* court agreed, holding that the facility and storage charges served the purpose of compensating Chemetron for some of the costs of producing and storing the gases supplied to Keystone. *Keystone*, 45 Ill. App. 3d at 719, 359 N.E.2d at 1205.

The *Airco* court distinguished *Keystone* on its facts. *Keystone* did not involve a merchant customer like *Airco* (and the taxpayers), but instead involved an on-site customer. In addition, Chemetron, the supplier in *Keystone*, did not sell and deliver industrial gases to its customer, but produced and stored the gases on its customer's property. See *Airco*, 223 Ill. App. 3d at 392, 584 N.E.2d at 1020-21.

In *Airco*, the plaintiff argued and the appellate court agreed that the situation presented was more analogous to those decisions where sales provided in connection with nontaxable services were deemed sufficiently independent of the nontaxable services to be taxed under the Act. For example, in *Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877, the court concluded that the

operator of a country club was engaged in the business of selling food and drink to its members, as well as providing social services. The business of selling food and drink was subject to the tax; the business of furnishing services was not. *Snite*, 398 Ill. at 46, 74 N.E.2d at 880.

Likewise, in *Lake View Memorial Gardens, Inc. v. Department of Revenue* (1984), 123 Ill. App. 3d 120, 462 N.E.2d 1000, the court found that the plaintiff, who primarily provided interment services, was also a retailer as to cement burial vaults. As in *Airco*, the plaintiff's customers were not required to purchase vaults from the plaintiff in order to obtain the plaintiff's services. (*Lake View*, 123 Ill. App. 3d at 126, 462 N.E.2d at 1005.) Because the plaintiff was willing to furnish services to its customers regardless of where they purchased their vaults, the court held that the sale of vaults was severable from the nontaxable interment services. (*Lake View*, 123 Ill. App. 3d at 126, 462 N.E.2d at 1005.) Therefore, the plaintiff was required to pay the retailers' occupation taxes on the receipts from the sale of the vaults.

Airco asserted that the best method to distinguish between a nontaxable service charge rendered in connection with the sale of tangible personal property and taxable services which are inseparable from the cost of selling the property is to ask, "Can the product that the customer has agreed to buy be sold to the customer without rendering the service?" If "yes," then the service charge should not be included in the selling price of the tangible personal property. *Airco*, 223 Ill. App. 3d at 392, 584 N.E.2d at 1021.

The court agreed with Airco that the most important fact under the circumstances presented was that Airco's customers were *not required* to rent storage equipment from Airco, but could purchase their own if they so desired. (*Airco*, 223 Ill. App. 3d at 392, 584 N.E.2d at 1021.) Based on this fact, the court held that no "inseparable link" existed between the sale of the gas and the furnishing of the storage facilities. (*Airco*, 223 Ill. App. 3d at 392, 584 N.E.2d at 1021.) Therefore, the facility rental payments were not subject to tax under the ROTA.

The trial court below reached a decision contrary to the *Airco* decision. Liquid Air and Cardox urge this court to reverse the trial court opinion and follow the *Airco* decision. The taxpayers correctly point out that both the factual and legal issues addressed in *Airco* are identical to the ones at bar. Liquid Air and Cardox acknowledge that this court is not bound to follow the decisions of other districts of the Illinois Appellate Court, but urge that absent a compelling

reason to disregard the decision in *Airco*, this court should follow that decision.

■ The law supports the taxpayers' argument. (See *Stec v. Oak Park Police Pension Board* (1990), 204 Ill. App. 3d 556, 561 N.E.2d 1234.) Unless this court has made a determination of its own contrary to that of another district, or a split of authority exists among the districts, reason compels us to follow the decisions of appellate courts in other districts. (See *Stec*, 204 Ill. App. 3d at 563, 561 N.E.2d at 1238.) This court has not made any determination of its own and no split in authority exists.

The Department of Revenue argues, however, that this court should not follow *Airco*, because *Airco* was wrongly decided. The Department maintains that the *Airco* decision contradicts the ROTA because it allowed Airco to deduct one of its expenses of doing business. However, the law does not support the Department's position.

The retailers' occupation tax regulations specifically exempt lease payments from taxation under the ROTA. (86 Ill. Adm. Code §130.2010 (1986).) The Department concedes that the rental agreements between the taxpayers and its customers who do *not* purchase product are *bona fide* lease agreements which are not subject to taxation under the ROTA. The Department takes the position, however, that when a customer purchases product at the same time it leases equipment, the lease is transformed into a cost of doing business and subject to taxation under ROTA. No authority is cited for this proposition.

■ The reasoning of the *Airco* decision is sound and the facts are squarely on point. Accordingly, this court chooses to follow *Airco*. The facility fees at issue do not constitute an inseparable element of the "amount of sale" received, as defined by the ROTA, and the fees are not subject to taxation. The order granting summary judgment in favor of the Department of Revenue should be vacated, and summary judgment should be entered in favor of the taxpayers.

Reversed and remanded with directions.

McNULTY, P.J., and GORDON, J., concur.