(No. 34183.—▮▮▮▮▮▮)

FARRAND COAL COMPANY, Appellant, *vs.* CLIFFORD E. HAL-PIN, Director of Revenue, *et al.,* Appellees.

*Opinion filed January 24, 1957—Rehearing denied March 19, 1957.*

HOFFMANN & HOFFMANN, of Springfield, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLARD ICE, MARK O. ROBERTS, and BROOKS BYUS, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff coal company appeals directly to this court from a decree of the circuit court of Sangamon County dismissing for want of equity its complaint to enjoin the

transfer from the protest fund of payments of retailers' occupation tax made under protest and for a determination that the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1955, chap. 120, par. 440 *et seq.*) does not apply to persons engaged in the business of selling the energy in coal to a utility which energy is transferred by the utility into electrical energy for sale at retail to its customers.

The public revenue being in issue, the appeal properly comes directly to this court.

The plaintiff coal company paid under protest $311.96 with the filing of its retailers' occupation tax return for December, 1952, which sum represented a tax purportedly due from it on the business of being engaged in the sale of coal to the city of Springfield which operates an electric utility. The plaintiff's complaint alleges that the tax in question pertains only to that part of its business constituting sales of energy purchased by the utility; that the utility purchases the energy from plaintiff coal company for the purpose of processing and transferring such energy into electrical energy for resale for ultimate consumption by purchasers of the energy; that the energy sold by the utility is the same energy it purchased, though changed in form into electrical energy; that the energy in the coal constitutes an ingredient or constituent or material of the electrical energy; that the energy purchased by the utility and also the electrical energy sold by the utility are both tangible personal property; that since the energy purchased by the utility is tangible personal property and the same energy is resold by the utility to its customers, the energy is not used or consumed by the utility; that the retail sale of tangible personal property purchased by the utility from plaintiff coal company cannot be consummated until the energy is sold by the utility; that there is not, therefore, a sale at retail by plaintiff coal company to the utility and there cannot be a sale upon which a tax can

be measured or imposed under the title or subject matter of the Retailers' Occupation Tax Act; that plaintiff, in the sale of energy in coal to the utility, which energy the utility resells, is not engaged in the business of selling tangible personal property to a purchaser for use or consumption, nor engaged in the business of making retail sales.

The answer of defendants denies that the tax is due from plaintiff on the business of being engaged in the sale of energy in coal to the city of Springfield but alleges that the tax is due from plaintiff on the sale of coal, and in substance denies all other allegations of the complaint.

The testimony offered was almost entirely expert testimony, consuming the better part of two full days. Plaintiff offered testimony by an associate professor of physics from Purdue University, by a doctor of philosophy in physics in the institute for nuclear studies of the University of Chicago, by another physics professor from the University of Chicago, and by the general superintendent of the utility, who was a graduate engineer from Purdue University. Defendants offered testimony by a professor of physics from the University of Illinois and by a professor of mining and metallurgical engineering from Washington University. The experts for the respective parties disagree with each other as to whether or not energy is tangible as a matter of scientific fact. Plaintiff's witnesses in substance testify that electrical energy and the energy in coal is tangible personal property and the same; defendants' witnesses testify that electrical energy is not tangible personal property nor merely energy from coal in a changed form.

The basic issue to be resolved in determining this case is whether, under the act in question, coal is sold as tangible personal property to the utility for use or consumption and not for resale and is therefore the measure of a taxable retail sale, or whether energy, as tangible personal prop-

erty, is bought in the form of coal, extracted therefrom, processed and resold as tangible personal property in the form of electrical energy.

The Retailers' Occupation Tax Act is, by its title, an act "in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." Section 1 of the act defines "sale at retail" as meaning "any transfer of the ownership of, or title to, tangible personal property to a purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." Section 1 of the same act further provides that "Sales of tangible personal property, which property as an ingredient or constituent goes into and forms a part of tangible personal property subsequently the subject of a 'sale at retail,' are not sales at retail as defined in this Act." However, nowhere in the act did the Illinois legislature define the meaning with which it used "tangible personal property" within the act.

It is apparent that the key to all the problems presented lies in the matter of definition of words used. The highly educated, experienced and qualified scientists who testified for both parties to this litigation, and whose testimony has been studied with much interest, undoubtedly are correct as to the respectively divergent views each testified to within the scope, meaning and definition of "tangible personal property" on which their respective views are based. The true criterion on which the decision of this case must turn is not what meaning the respective witnesses may attach to such phrase, but what was the intention and meaning of the General Assembly in using such phrase in the statute in question.

It is well settled that, in the absence of statutory definitions indicating a different legislative intention, the courts will assume that words have their ordinary and popularly understood meanings. *Bradley Supply Co.* v. *Ames,* 359

Ill. 162; *Revzan* v. *Nudelman,* 370 Ill. 180; *Mallen Co.* v. *Department of Finance,* 372 Ill. 598; *Material Service Corp.* v. *McKibbin,* 380 Ill. 226.

An examination of the statute in question and the objectives intended to be accomplished thereby clearly indicates that the General Assembly when using the word tangible in referring to personal property had in mind the ordinary and popularly understood meaning of such term as indicated in Webster's first definition thereof, which is "Capable of being touched; also, perceptible to the touch; tactile; palpable." Webster's New International Dictionary, Second Edition, Unabridged, 1946.

The same dictionary gives the law definition of the term "tangible property" as "Corporeal property either real or personal" and defines "corporeal" as meaning "Of the nature of, consisting of, or pertaining to, matter or a material body; physical; bodily; material;—opposed to *spiritual* or *immaterial* * * * Tangible or palpable."

From the evidence it appears that although energy and mass are closely interrelated, indestructible, equivalent, interchangeable, directly proportional to and may be equated with each other, yet energy as such cannot be separated from mass or matter and stored, weighed, transported, handled, liquified, solidified, photographed, touched or otherwise perceived by the senses in its own right or capacity separate and apart from mass or matter. All witnesses who testified on the subject, including plaintiff's witnesses, agreed that energy cannot be separated from matter and tagged or otherwise physically identified in any way, cannot be located spacially, and does not have dimensions. In all these respects energy falls short of fitting into the ordinary and popularly understood meaning of the word "tangible" as used by the General Assembly in the act in question.

We recognize that Webster further gives a second definition to "tangible" as meaning "Capable of being realized

by the mind; externally real; substantial; objective." This was the definition of "tangible" on which plaintiff's scientists based their conclusions, as opposed to *"spiritual* or *immaterial."* Within the scope of such a broad and generalized definition, such conclusions are undoubtedly sound and valid. But we cannot conceive that the General Assembly had such a broad and general meaning in mind when enacting this tax legislation.

Although this court recognizes electricity as personal property, it has at no time held electricity to be "tangible" personal property. In *Peoples Gas Light and Coke Company* v. *Ames,* 359 Ill. 152, it was held that gas and electric public utilities were engaged in a service business and not subject to the retailers' occupation tax, and decision as to whether or not electricity was tangible personal property was expressly declined as unnecessary to a disposition of the case.

In *People* v. *Menagas,* 367 Ill. 330, electric current was held to be a subject of larceny under the Illinois Criminal Code. Such decision held only that electric current and energy was personal property as distinguished from real property, and in fact on pages 333 and 338 the court twice referred to electrical energy as being intangible.

Most of the authorities relied on by plaintiff holding electricity to be tangible personal property are from foreign jurisdictions involving statutes specifically declaring electricity to be such. Of course, such definition is not present in the instant statute here in issue. The other cases relied on by plaintiff hold electric utility companies to be engaged in manufacturing commodities. Such cases are contrary to the holding of this court in *People ex rel. Mercer* v. *Wyanet Electric Light Co.* 306 Ill. 377, that electric utility companies are neither manufacturing nor mercantile companies so as to have their capital stock assessed locally instead of by the State assessing authority.

It seems patently clear that plaintiff is engaged in the business of selling coal to utilities. Such coal constitutes tangible personal property within the popular meaning of that term as used in the act in question. The coal is used by the utility to generate electrical energy. Such use is by the burning or combustion of the coal. When burned, the coal is gone except for the ash residue. It is difficult to perceive how there could be a more complete use or consumption of the coal within the meaning of the act. Clearly plaintiff coal company has sold tangible personal property to the utility for use or consumption.

The sale of electrical energy generated by the utility through the use or consumption of coal as a service to the utility customers is not, within the ordinary meaning of the statutory language, a sale "of tangible personal property [coal], which property as an ingredient or constituent goes into and forms a part of tangible personal property [electrical energy] subsequently the subject of a 'sale at retail.' "

The tax here imposed is an occupational privilege tax and not a property tax. The fact that the utility is subject to a public utilities revenue tax avails plaintiff nothing. Plaintiff's argument as to double taxation was disposed of against the taxpayer in *Franklin County Coal Co.* v. *Ames*, 359 Ill. 178.

Coal was sold as tangible personal property to the utility for use or consumption and not for resale within the meaning of the Retailers' Occupation Tax Act and is therefore the measure of a taxable retail sale. The trial court decision was correct.

*Decree affirmed.*