No. 2--06--0637          Filed: 6-27-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| QUALITY SAW AND SEAL, INC., | ) | On Petition for Administrative Review |
| | ) | from the Illinois Commerce Commission. |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 05--0407 |
| | ) | |
| ILLINOIS COMMERCE COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | |

JUSTICE BYRNE delivered the opinion of the court:

On August 10, 2004, petitioner, Quality Saw & Seal, Inc. (Quality Saw), struck and damaged a ¾-inch-thick underground natural gas transmission facility that was owned and operated by North Shore Gas Company (North Shore). The damage occurred while Quality Saw was "saw-cutting" concrete pavement in Highland Park. Respondent, the Illinois Commerce Commission (the Commission), initiated proceedings to determine whether, in striking the underground gas line, Quality Saw or one of its employees violated section 4(d) of the Illinois Underground Utility Facilities Damage Prevention Act (the Act), which requires any person who plans to engage in "excavation" or "demolition" to notify the owners or operators of nearby gas lines. See 220 ILCS 50/4(d) (West 2004). Following a hearing, the Commission determined that Quality Saw's saw-cutting amounted to excavation under the Act. The Commission imposed a $450 penalty based on a finding that Quality Saw wilfully failed to comply with the notice requirement of section 4(d).

On appeal, Quality Saw argues that it was not engaging in "excavation," and therefore, the notice requirement of the Act does not apply and we must reverse the penalty imposed by the Commission. Quality Saw argues that (1) concrete pavement is not "earth, rock, or other material" and saw-cutting is not "excavation" as defined by section 2.3 of the Act; and (2) the Commission's finding that Quality Saw wilfully violated section 4(d) of the Act is against the manifest weight of the evidence. We reject Quality Saw's arguments and affirm the Commission's order accordingly.

FACTS

A preliminary recitation of the statutory framework is helpful. Section 4(d) of the Act provides:

"§4. Every person who engages in nonemergency excavation or demolition shall

* * *

(d) provide notice not less than 48 hours *** but no more than 14 calendar days in advance of the start of the excavation or demolition to the owners or operators of the underground utility facilities or CATS facilities in and near the excavation or demolition area through the State-Wide One-Call Notice System or, in the case of nonemergency excavation or demolition within the boundaries of a municipality of at least one million persons which operates its own one-call notice system, through the one-call notice system which operates in that municipality." 220 ILCS 50/4(d) (West 2004).

Further, Section 11(a) of the Act provides that "[e]very person who, while engaging in excavation or demolition, wilfully fails to comply with the Act by failing to provide the notice to the owners or operators of the underground facilities or CATS facility near the excavation or demolition area through the State-Wide One-Call Notice System as required by Section 4 [or 6] of this Act shall

be subject to a penalty of up to $5,000 for each separate offense and shall be liable for the damage caused to the owners or operators of the facility." 220 ILCS 50/11(a) (West 2004).

On June 29, 2005, the Commission initiated a proceeding under Article X of the Public Utilities Act (220 ILCS 5/10--101 et seq. (West 2004)) and section 11(m) of the Act (220 ILCS 50/11(m) (West 2004)). Most of the operative facts are uncontested. Chicagoland Paving Contractors, Inc. (Chicagoland), hired Quality Saw to perform full-depth saw-cutting of concrete pavement and curbs for various removal applications of the pavement near 2180 Kipling Lane in Highland Park. Saw-cutting is a method of separating a solid piece of concrete or asphalt using a diamond- or carbon-blade tool. Quality Saw was to cut through the entire thickness of the pavement.

Chicagoland notified North Shore of the planned project, and North Shore responded by marking the location of its facilities at the address. Quality Saw did not inform North Shore of its plans to cut the pavement. Commission staff witness William Riley testified that working under another excavator's line-marking request was not permitted, and Quality Saw does not contest that position here.

North Shore's records indicate that on August 10, 2004, Chicagoland employee Brian Lehr called North Shore to report that a gas line had been hit. The line was a ¾-inch steel gas service facility operating at a pressure of 45 pounds per square inch (psi). Quality Saw admitted damaging the gas line while saw-cutting the pavement.

While the horizontal location of the gas line was known, there is some dispute over its depth. Quality Saw employee Mike Seals testified that the line was buried in the bottom of the concrete pavement. Ted Anderson, North Shore's special claims investigator, disagreed, testifying that the line was not embedded in the concrete, but instead was in the dirt just below the pavement.

In a nearly identical incident in 2003, Quality Saw damaged another underground gas facility while saw-cutting pavement. In the 2003 incident, Chicagoland submitted a request to mark the lines, but Quality Saw performed the saw-cutting without independently requesting marking of the lines. At the time, Quality Saw believed that saw-cutting of pavement did not require an owner or operator to mark lines, and Quality Saw was unaware that working under another excavator's request for markings was not permitted. The Commission did not impose a penalty in the 2003 case because Quality Saw's perception of the law at the time indicated that its violation of the notice requirement was not wilful. However, in this case, the Commission concluded that the 2003 incident put Quality Saw on notice that it was required to comply with the Act in the future, and therefore, Quality Saw's recent noncompliance was wilful.

During the proceedings, Quality Saw did not contest that it was engaged in the saw-cutting of pavement at the location in question. Quality Saw also did not deny that an employee damaged the gas service facility. However, Quality Saw argued that it was not engaging in "excavation" or "demolition" as those terms are used in the Act, and therefore, the Act did not require notice or authorize a penalty or damages for noncompliance with the notice provision.

Section 2.3 of the Act defines "excavation" as follows:

" 'Excavation' means any operation in which earth, rock, or other material in or on the ground is moved, removed, or otherwise displaced by means of any tools, power equipment or explosives, and includes, without limitation, grading, trenching, digging, ditching, drilling, augering, boring, tunneling, scraping, cable or pipe plowing, and driving but does not include farm tillage operations or railroad right-of-way maintenance or operations or coal mining operations regulated under the Federal Surface Mining Control and Reclamation Act of 1977

[30 U.S.C. §1201 et seq. (2000)] or any State law or rules or regulations adopted under the federal statute, or land surveying operations as defined in the Illinois Professional Land Surveyor Act of 1989 [225 ILCS 330/1 et seq. (West 2004)] when not using power equipment." 220 ILCS 50/2.3 (West 2004).

The Commission concluded that Quality Saw's conduct qualified as "excavation," under section 2.3 of the Act, and therefore, Quality Saw violated the notice provision of section 4(d) of the Act by failing to contact the Joint Utilities Location Information for Excavators (JULIE), the "State-Wide One-Call Notice System" (see 220 ILCS 50/4(d) (West 2004)), and request the location and marking of all utilities in the area of the work to be performed. The Commission imposed a $450 penalty pursuant to section 11(a) of the Act.

## ANALYSIS

On appeal, Quality Saw renews the arguments it raised before the Commission. Quality Saw argues that we must reverse the Commission's order because (1) concrete pavement is not "earth, rock, or other material" and saw-cutting is not "excavation" within the meaning of section 2.3 of the Act; and (2) the finding that Quality Saw wilfully violated section 4(d) of the Act is against the manifest weight of the evidence. After considering our standard of review, we reject Quality Saw's assertions.

### A. Standard of Review

Direct appeals to this court from decisions by the Commission are governed by the Public Utilities Act. 220 ILCS 5/10--201(a) (West 2004); Ramsey Emergency Services, Inc. v. Illinois Commerce Comm'n, 367 Ill. App. 3d 351, 357 (2006). On review, "[t]he findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the

Commission; rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions." 220 ILCS 5/10--201(d) (West 2004).

A reviewing court shall reverse a decision of the Commission, in whole or in part, where the court determines that the Commission's findings "are not supported by substantial evidence based on the entire record." 220 ILCS 5/10--201(e)(iv)(A) (West 2004). "We will set aside the Commission's decision where it appears that the Commission acted outside the scope of its authority, where it infringed on a constitutional right, or where its findings are against the manifest weight of the evidence." Ramsey, 367 Ill. App. 3d at 357. "The Commission's findings are prima facie evidence that an order was reasonable, but we are not obligated to believe that the facts in evidence demand a given conclusion if that conclusion is not reasonable, and we will reverse an order of the Commission if it is clearly unreasonable." Ramsey, 367 Ill. App. 3d at 357-58.

Before reviewing the Commission's ultimate decision to impose a penalty, we are presented with the issue of interpreting the terms "excavation" and "earth, rock, and other material" as they are used in section 2.3 of the Act. The general rules of statutory interpretation are familiar and well-settled. The interpretation of a statute is a question of law, subject to de novo review. The fundamental principle of statutory construction is to determine and give effect to the intent of the legislature. The statutory language is the best indication of legislative intent. "When the meaning of a statute is not clearly expressed in the statutory language, a court may look beyond the language [used] and consider the purpose behind the law and the evils the law was designed to remedy.

[Citation.] When the language of an enactment is clear, it will be given effect without resort to other interpretative aids." Petersen v. Wallach, 198 Ill. 2d 439, 444-45 (2002).

Citing these principles, Quality Saw argues that we must determine the statute's meanings without considering the Commission's interpretation. The Commission responds that we should defer to its interpretation because it has expertise in public utility matters.

Indeed, "if the legislature has charged an agency with administering and enforcing a statute, we 'will give substantial weight and deference' to the agency's resolution of any ambiguities in that statute--even if the ambiguity concerns the extent of the agency's jurisdiction under that statute." Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 362 Ill. App. 3d 652, 656 (2005), quoting Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n, 95 Ill. 2d 142, 152 (1983). As our supreme court has made clear, " 'the general principle of judicial deference to administrative interpretation applies in full strength where such interpretation involves resolution of jurisdictional questions.' " Illinois Consolidated Telephone Co., 95 Ill. 2d at 152-53, quoting Pan American World Airways, Inc. v. Civil Aeronautics Board, 392 F.2d 483, 496 (D.C. Cir. 1968).

Thus, if reasonable readers of a statute could differ over the extent of the regulatory authority it confers, we defer to the agency's interpretation if the interpretation is defensible. That rule holds true even if the agency only recently arrived at the interpretation. Illinois Consolidated Telephone Co., 95 Ill. 2d at 154. The longer an agency has adhered to an interpretation of the statute, the more weight the interpretation deserves; but consistency and duration are not prerequisites to our duty of deference. Illinois Consolidated Telephone Co., 95 Ill. 2d at 153-54.

Ambiguity is, however, a prerequisite: we do not defer to an agency's interpretation unless the statute is ambiguous. Boaden v. Department of Law Enforcement, 171 Ill. 2d 230, 239 (1996)

("As we find that the statute is not ambiguous, we decline to defer to the [agency's] interpretation"). "If the legislative intent is clear, 'that is the end of the matter.' " Illinois Bell Telephone Co., 362 Ill. App. 3d at 657, quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 81 L. Ed. 2d 694, 703, 104 S. Ct. 2778, 2781 (1984). But if the statute is ambiguous, that is to say if reasonably well-informed persons could understand it in more than one sense, " 'the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, *** the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " Illinois Bell Telephone Co., 362 Ill. App. 3d at 657, quoting Chevron, 467 U.S. at 843, 81 L. Ed. 2d at 703, 104 S. Ct. at 2782. If the statute is ambiguous, a court will not substitute its own construction of a provision for a reasonable interpretation adopted by the agency charged with the statute's administration. Illinois Bell Telephone Co., 362 Ill. App. 3d at 657.

### B. Statutory Interpretation of "Excavation"

We conclude that section 2.3 of the Act, which defines excavation, is not ambiguous, and therefore, we need not defer to the Commission's interpretation. Nevertheless, we agree with the Commission that the legislature defined the term excavation extremely broadly to include the type of saw-cutting of pavement that caused the damage to North Shore's gas line.

Quality Saw focuses on the portion of section 2.3 that states, " 'Excavation' means any operation in which earth, rock, or other material in or on the ground is moved, removed, or otherwise displaced." (Emphasis added.) 220 ILCS 50/2.3 (West 2004). Quality Saw invokes the doctrine of ejusdem generis in arguing that the phrase "other material" in section 2.3 encompasses only naturally occurring materials and excludes concrete pavement and any other man-made material. The doctrine

of ejusdem generis, which is used to interpret statutes, provides that "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " People v. Davis, 199 Ill. 2d 130, 138 (2002), quoting Farley v. Marion Power Shovel Co., 60 Ill. 2d 432, 436 (1975). Thus, Quality Saw contends that section 2.3 specifically describes "earth" and "rock" as classes of things, and therefore, the legislature used the phrase "other material" intending for that phrase to include only natural materials that are like earth and rock. Quality Saw asserts that pavement is not like earth and rock because it is man-made, and therefore, any displacement of pavement is not excavation under section 2.3. A review of section 2.3 in its entirety indicates that the legislature did not intend such a limited and tortured interpretation.

A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. "In construing a statute, we presume that the legislature, in its enactment of legislation, did not intend absurdity, inconvenience or injustice." DeLuna v. Burciaga, 223 Ill. 2d 49, 60 (2006).

The legislature defined excavation very broadly as "any operation" that causes material to be "moved, removed, or otherwise displaced by means of any tools, power equipment or explosives." 220 ILCS 50/2.3 (West 2004). Thus, the legislature was focused on the location of material ("in or on the ground") and the way the material might be altered ("moved, removed, or otherwise displaced"), not on the type of material. Also, the term "any operation" is defined by a long list of means, including, "without limitation, grading, trenching, digging, ditching, drilling, augering, boring, tunneling, scraping, cable or pipe plowing, and driving." (Emphasis added.) 220 ILCS 50/2.3 (West

2004). Nothing in the plain language of section 2.3 indicates a legislative intent to exclude saw-cutting of pavement. Also, adopting Quality Saw's interpretation that "other material" does not include man-made materials like concrete pavement would lead to an arbitrary and absurd result: certain projects would qualify as excavations and others would not based simply on whether a particular displacement was of man-made material.

Even if we were to adopt Quality Saw's position that pavement does not qualify as "other material" under section 2.3, we would nevertheless conclude that Quality Saw engaged in excavation. Saw-cutting the entire depth of concrete pavement, as was performed in this case, necessarily involves at least some displacement of the earth and rock below. Section 2.3 does not specify a threshold amount of material to be "moved, removed, or otherwise displaced" for it to qualify as excavation. Thus, the plain language of section 2.3 suggests that any displacement of earth or rock--even minimal displacement during the full-depth saw-cutting of pavement--requires notification of the owner or operator of the gas line, pursuant to section 4(d). While saw-cutting the pavement, Quality Saw displaced earth or rock at least minimally, and therefore, Quality Saw could be penalized for wilful noncompliance with the notification requirement.

Furthermore, we are persuaded by the Commission's position that the legislature would have had no need to add an exemption for roadway surface milling (see 220 ILCS 50/2.3 (West 2006)) if concrete and roadways were never intended to be included as "other material" under section 2.3. Adding the exemption for roadway surface milling would have been superfluous if concrete and roadways were already excluded from "other material."

Quality Saw does not contend that saw-cutting is the equivalent of roadway surface milling. Roadway surface milling is defined as "the removal of a uniform pavement section by rotomilling,

grinding, or other means <u>not including the base or subbase</u>."  (Emphasis added.)  220 ILCS 50/2.11 (West 2006).  Quality Saw admitted that its saw-cutting passed through the entire depth of the pavement to the dirt.  In any event, the legislature added the exemption for roadway surface milling after Quality Saw damaged the gas line, and therefore, the exemption could not apply to this case.

In arguing that saw-cutting is not "excavation" under section 2.3, Quality Saw takes inconsistent positions.  For instance, Quality Saw argues that we should disregard the opinions of the Commission's experts as to the meaning of excavation because "an expert is not competent to give testimony amounting to statutory interpretation" or "testify with respect to legal conclusions." Quality Saw then argues for a reversal of the penalty, advocating the opinions of its own experts on the same point.  Also, Quality Saw does not attempt to establish the ambiguity of section 2.3 before resorting to regulations, foreign statutes, and cases as interpretive aids.

There is no dispute that Quality Saw cut the pavement above the gas line without first notifying North Shore as required by section 4(d) of the Act.  Moreover, William Riley, the manager of the JULIE enforcement department, and Chuck Fairfield, an investigator in the Commission's JULIE enforcement division, testified that Quality Saw knew and consciously disregarded the Commission's position that saw-cutting was excavation that required notice.  The testimony supports the Commission's conclusion that Quality Saw acted wilfully.  Under these circumstances, the Commission's decision to impose the $450 penalty is not against the manifest weight of the evidence.

For the preceding reasons, the order of the Illinois Commerce Commission is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.