SIXTH DIVISION
November 21, 2008

No. 1-07-1341


NANCY KEAN, Individually and on Behalf )
of All Others Similarly Situated, )
)
           Plaintiff-Appellant, )
)
v. )          Appeal from the
)          Circuit Court of
WAL-MART STORES, INC., )          Cook County, Illinois.
WAL-MART.COM, U.S.A., LLC, and )
WAL-MART ASSOCIATES, INC., )
)          No. 06 CH 21735
          Defendants-Appellees )
)
(Chip Russell, Individually and on Behalf )          Honorable
of All Others Similarly Situated, )          Philip L. Bronstein,
)          Judge Presiding.
          Intervenor and Plaintiff-Appellant; )
)
The Department of Revenue and Alexi )
Giannoulias as Treasurer of the State of Illinois, )
)
          Intervenors and Defendants-Appellees). )


JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff Nancy Kean and Plaintiff-Intervenor Chip Russell (collectively plaintiffs) filed

complaints against Wal-Mart Stores, Inc., Wal-Mart.com, U.S.A., LLC, and Wal-Mart

Associates, Inc. (collectively Wal-Mart), alleging that Wal-Mart violated Illinois law by charging

an unauthorized sales tax upon shipping charges for goods purchased through its website. The

trial court dismissed their complaints, finding that under the facts as alleged by plaintiffs, the

shipping charges were subject to sales tax as a matter of law. For the reasons that follow, we

No. 07-1341

affirm.

I.  BACKGROUND

On October 12, 2006, Kean filed her class action complaint against Wal-Mart, in which she alleged the following: Through Wal-Mart's website, http://www.walmart.com, Kean purchased a mini-trampoline for personal use on September 9, 2006.  The price of the trampoline was $23.33, the shipping charge was an additional $7.97, and the sales tax charge was $2.74, based upon the sum of the product price and the shipping charge.  Kean stated that although she paid, she sent a letter to Wal-Mart on that same day protesting the imposition of sales tax on the cost of shipping, but Wal-Mart represented that the tax was proper and would not rescind the charge.

Kean then stated that such shipping charges are not properly subject to sales tax.  She therefore sought relief in three counts.  In Count I, she contended that by collecting an unauthorized tax on shipping, Wal-Mart violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.* (West 2006); accordingly, on behalf of herself and all other similarly situated consumers, she sought actual damages.  In Count II, she contended that Wal-Mart was unjustly enriched to the extent that it did not deliver the taxes it collected to the state, and she sought disgorgement of any such wrongfully retained money.  Finally, in Count III, she sought injunctive relief preventing Wal-Mart from collecting such taxes in the future.

Attached to the complaint as an exhibit is a printout of the alleged letter of protest that Kean sent to Wal-Mart's online Help Desk on September 9, 2006, which reads as follows:

"I recently checked with the State of Illinois, and was told that it is not legal to charge tax on shipping. Therefore, you are charging too much tax on my order, which should be charged at 8.75% on the item ONLY.

Please adjust and advise."

Also attached is a response by a Wal-Mart customer service representative stating that Wal-Mart is required to collect sales tax on taxable items shipped to Illinois and that shipping and handling charges are subject to sales tax in applicable states.

On November 14, 2006, Kean filed a motion for a preliminary injunction requiring Wal-Mart to deposit all the sales tax on shipping services that it had collected into a protest fund (i.e., an interest-bearing fund set up by the court to hold disputed tax money until the rightful owner could be determined) instead of remitting the money to the state. In that motion, Kean averred that such relief was necessary because, if Wal-Mart were to remit the collected taxes to the state, Kean and the class members would no longer have standing to recover the taxes, pursuant to *Adams v. Jewel Companies, Inc.*, 63 Ill. 2d 336, 343, 348 N.E.2d 161, 165 (1976).

In its response to Kean's motion, Wal-Mart stated that it had already remitted all September 2006 taxes, including any tax paid by Kean, to the state on October 20, 2006. It averred that it always remits taxes to the state on the 20th day of the month following the month that the tax is charged. In support of this averment, it attached the affidavit of Michael Estes, the Senior Tax Manager of Sales & Use Tax Systems for Wal-Mart. Based upon these allegations, the court denied Kean's motion.

No. 07-1341

On November 29, 2006, the Illinois Department of Revenue and the State Treasurer[1] (the state defendants) sought to intervene in the action as additional defendants; their motion was granted.

On December 20, 2006, Chip Russell sought to intervene in the action and file his own complaint against Wal-Mart and the state defendants; his motion was granted. The following day, Russell filed his complaint, in which, like Kean, he contended that Wal-Mart had committed consumer fraud by collecting an unlawful tax on shipping charges for online sales. He alleged that on December 5, 2006, he purchased a Leapfrog Leapster Learning System through Wal-Mart's website. The cost of the item was $59.84. To purchase the item, Russell allegedly clicked a button to add the item to his "electronic shopping cart." He then proceeded to the "checkout" page, where he was presented with three different options for shipping; he chose the option of having the item shipped in 2-3 days, at a stated cost of $11.97. Russell then alleged that Wal-Mart imposed sales tax on the cost of the item as well as the shipping of that item, bringing the total to $78.27, which he paid. He stated that it is Wal-Mart's general practice to charge sales tax on all shipping charges of this nature.

Russell averred that Wal-Mart contracts with a third-party shipper, such as UPS or FedEx, to deliver purchases made at its online store, and the shipping charges it imposes are entirely or almost entirely reflective of the actual cost paid to the third party. He also stated that

---

[1] At the time of intervention, the Treasurer was Judy Barr Topinka; she has since been succeeded as Treasurer by Alexi Giannoulias, who is substituted for her as the named defendant. See 735 ILCS 5/2-1008(d) (West 2006).

-4-

when a customer returns a product purchased online, the customer receives no refund of the shipping charges unless the product was damaged.

Like Kean, Russell contended that the cost of shipping such items is not taxable under Illinois law. Therefore, on behalf of himself and the class of similarly situated consumers, Russell sought actual damages, an injunction requiring Wal-Mart to place all such collected taxes in a protest fund rather than sending them to the State, and a permanent injunction barring Wal-Mart from collecting such taxes in the future.

On the same day that he filed his complaint, Russell also moved for a preliminary injunction requiring Wal-Mart to place the disputed tax money in a protest fund rather than voluntarily remitting it to the state. The court held a hearing on that motion on January 17, 2007. During this hearing, the court discussed with plaintiffs' counsel whether it was possible to make online purchases without concurrently purchasing shipping services:

> "THE COURT: And you don't plead that you could go to your local Wal-Mart having placed the order and pick up the item.
>
> MR. RAPHAEL [counsel for plaintiffs]: I will say you can go to your local Wal-Mart and pick up the very item that was ordered off of the Internet. You can't pick it up after you've ordered it, but it's available both on the Internet and –
>
> THE COURT: Well, I don't need to know at this point if a basket of goods available on this website are exactly the same as the basket of goods available at your local Wal-Mart, and I don't know if this case turns on that. Suffice it to say, if I choose no [shipping] option, I can't buy it, right?

MR. RAPHAEL: Correct."

Later that day, the court denied Russell's motion for a preliminary injunction, determining that Russell had not shown that he was likely to succeed on the merits of his claim as required for the issuance of a temporary restraining order. The court began by stating that, if Wal-Mart were properly taxing the shipping charges at issue, then plaintiffs would clearly not be entitled to the injunctive relief they requested. The court found that the shipping charges paid by Russell were part of the total selling price of the item purchased and concluded that "it is clear to the court from the language of the relevant statute [Retailers' Occupation Tax Act, 35 ILCS 120/1 *et seq.* (West 2006) (ROTA); Use Tax Act, 35 ILCS 105/1 *et seq.* (West 2006)] that the tax here is proper."

Meanwhile, both Wal-Mart and the state defendants filed motions to dismiss plaintiffs' complaints for failure to state a claim. The court held a hearing on those motions on April 20, 2007, at which it decided to grant these motions because it stated that the tax at issue was proper. The court issued an order that same day stating that the complaints would be dismissed "for the reasons set forth in the Court's January 17, 2007, Order Denying Russell's temporary restraining order." Plaintiffs timely filed the instant appeal.

II. ANALYSIS

On appeal, plaintiffs argue that, under the facts as alleged in their complaints, the shipping charges at issue were not subject to sales tax as a matter of law; thus, they contend that the trial court erred in dismissing their complaints. Defendants naturally dispute this. They also contend that, in any event, plaintiffs lack standing to pursue their claims under the voluntary

No. 07-1341

payment doctrine, so dismissal was proper.[2]

The dismissal of an action for failure to state a claim is subject to *de novo* review. *Hadley v. Illinois Dept. of Corrections*, 224 Ill. 2d 365, 370, 864 N.E.2d 162, 165 (2007). Dismissal is appropriate where no set of facts could be proved under the pleadings that would entitle plaintiffs to relief. *Casualty Ins. Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1033, 753 N.E.2d 370, 374 (2001); *Wright v. City of Danville*, 174 Ill. 2d 391, 398, 675 N.E.2d 110, 115 (1996). In reviewing a motion to dismiss, we accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiffs. *Casualty*, 323 Ill. App. 3d at 1033, 753 N.E.2d at 374. However, plaintiffs may not rely on factual or legal conclusions that are not supported by factual allegations. *Gore v. Indiana Ins. Co.*, 376 Ill. App. 3d 282, 285, 876 N.E.2d 156, 161 (2007). We may affirm the dismissal of a complaint on any ground that is apparent from the record. *Golf v. Henderson*, 376 Ill. App. 3d 271, 275, 876 N.E.2d 105, 109 (2007).

In the case at hand, plaintiffs argue that both the language of the relevant taxing statutes and the Department of Revenue regulations interpreting that language demonstrate that shipping charges cannot be considered part of the "total selling price" of the goods sold, so as to be subject to sales tax. We first consider the issue of statutory interpretation in light of the relevant case law; we then move to consider the Department of Revenue regulations raised by plaintiffs.

---

[2] Although defendants raised this issue before the trial court, the trial court did not rule upon it, as it stated that the tax was valid and so plaintiffs would not be entitled to relief regardless of whether the tax was paid voluntarily.

No. 07-1341

In interpreting the relevant provisions of the ROTA and the Use Tax Act, we are mindful that our goal is "to ascertain and give effect to the true intent and meaning of the legislature." *People v. Trainor*, 196 Ill. 2d 318, 332, 752 N.E.2d 1055, 1063 (2001). The statutory language chosen by the legislature, when read in context, is considered the best indicator of the true meaning of the statute. *Trainor*, 196 Ill. 2d at 332, 752 N.E.2d at 1063. However, that language must be evaluated in light of other relevant provisions of the statute, rather than read in isolation. *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 783, 871 N.E.2d 260, 267 (2007).

The relevant statutory language is as follows: Sales tax, as defined in the ROTA and the Use Tax Act, is a tax upon the sale and subsequent use of "tangible personal property." 35 ILCS 120/2 (West 2006); 35 ILCS 105/3 (West 2006). The tax rate under the ROTA is based upon "gross receipts from sales of tangible personal property made in the course of business." 35 ILCS 120/2-10 (West 2006). "Gross receipts" are defined as "the total selling price or the amount of such sales [of tangible personal property]." 35 ILCS 120/1 (West 2006). "Selling price" is, in turn, defined in both the ROTA and the Use Tax Act as:

> "the consideration for a sale valued in money *** and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever." 35 ILCS 120/1 (West 2006); 35 ILCS 105/2 (West 2006).

Thus, if the shipping charges at issue can be considered part of the "selling price" of the items purchased through Wal-Mart's Web site, they are part of Wal-Mart's "gross receipts" under the

No. 07-1341

ROTA and are therefore subject to sales tax.

Plaintiffs' first major argument, based upon the statutory text quoted above, is that shipping charges are not actually part of the selling price of goods purchased online. That is, they do not claim that shipping charges are *per se* deductible, nor can they make such a claim. See 35 ILCS 120/1 (West 2006) (merchants are not allowed to deduct any expenses that may form part of the selling price of their wares); 35 ILCS 105/2 (West 2006); see also *Keystone Consolidated Industries, Inc. v. Allphin*, 45 Ill. App. 3d 714, 359 N.E.2d 1202 (1977) (applying this statutory language to hold that company's purchase of gaseous nitrogen and oxygen was subject to use tax in its entirety without deducting the "facility charge" for the storage of those gases). Rather, plaintiffs argue that such charges are not taxable because they do not form part of the taxable base in the first place. Defendants, on the other hand, contend that the shipping charges are part of the selling price of the items, because it is impossible to purchase items from Wal-Mart's Web site without first selecting a shipping method and agreeing to pay for it.

In determining whether service charges form part of the selling price of goods, courts have ruled that the crucial issue is whether there is an "inseparable link" between the sale of goods and the associated shipping charges. *Gapers, Inc. v. Department of Revenue*, 13 Ill. App. 3d 199, 203, 300 N.E.2d 779, 782 (1973); *Velde Ford Sales, Inc. v. Department of Revenue*, 136 Ill. App. 3d 589, 483 N.E.2d 721 (1985); *Airco Industrial Gas Division, BOC Group, Inc. v. Department of Revenue*, 223 Ill. App. 3d 386, 584 N.E.2d 1017 (1991). If such a link exists, then the shipping charges are part of the selling price and subject to sales tax under the ROTA and Use Tax Act; if not, then not. *Gapers* is instructive on this issue. There, plaintiff operated a

-9-

home catering business in which it arranged parties at the homes of its consumers. In finding that plaintiff was not entitled to deduct the cost of transporting food and other goods to its customers' homes, the court stated: "the delivery *** becomes an inseparable link in the chain of events leading to the completion of the sale of meals to purchasers and not merely incidental to the purpose of the taxpayer's business of catering private parties in its customers' homes." *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782; see also *Terrace Carpet Co. v. Department of Revenue*, 46 Ill. App. 3d 84, 91, 360 N.E.2d 153, 157 (1977) (plaintiff, which was engaged in the retail sale of wall-to-wall carpeting, was required to pay sales tax on carpet installation costs because installation was an "inseparable link in the completion of the transaction with the consumer").

Likewise, in *Velde Ford Sales*, the court found that the plaintiff car dealer was required to pay sales tax on certain services rendered after the completion of an automobile sale. After a customer purchased an automobile from plaintiff's dealership, plaintiff would offer to process the license and title applications for that automobile in exchange for a fee. The court found that performance of this service was "substantially 'an inseparable link in the chain of events' involved in the sale of automobiles even though the transaction usually took place after the sale had been completed." *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723, quoting *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782. It reasoned that under state law, plaintiff was required to provide at least some of such services in connection with the sale, so there was an intrinsic link between the services at issue and the taxable sale. *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723. The court also noted that provision of the service was merely

incident to the sale of the vehicle. *Velde Ford Sales*, 136 Ill. App. 3d at 593, 483 N.E.2d at 724.

By contrast, in *Airco*, the court applied the "inseparable link" test of *Gapers* to find that the plaintiff, an industrial gas seller, did not have to pay sales tax on the money it received from renting gas storage tanks to its customers. Under the *Airco* facts, the parties stipulated that plaintiff's customers needed to have insulated storage tanks in order to take possession of liquid gases they purchased from plaintiff; however, they could choose to use their own storage tanks or rent tanks from plaintiff. *Airco*, 223 Ill. App. 3d at 387, 584 N.E.2d at 1018. The court found that these facts were sufficient to show that there was no inseparable link between purchase and rental, so the rental was not part of the "selling price" of the gas under the ROTA. *Airco*, 223 Ill. App. 3d at 392-93, 584 N.E.2d at 1021; see also *Liquid Air Corp. v. Johnson*, 240 Ill. App. 3d 722, 608 N.E.2d 558 (1992) (applying *Airco* to a highly factually similar situation).

We find that the instant case is analogous to *Gapers* and *Velde Ford Sales* rather than *Airco*. Plaintiffs did not allege in their complaints that it was possible to purchase goods from Wal-Mart's Web site without also paying for shipping; indeed, before the trial court, counsel for plaintiffs conceded that selecting a shipping option was a necessary step in any online purchase. Under such a setup, the payment of shipping costs is a required element of the sale of tangible goods, so it is subject to sales tax under the test articulated in *Gapers*. *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782. Just as the customers in *Gapers* could not purchase catering services without having the food and other materials delivered to their homes, and just as the customers in *Velde Ford Sales* could not purchase vehicles without also submitting license and title applications to the state, so the customers at Wal-Mart's online site cannot purchase products

No. 07-1341

without agreeing to pay shipping on their purchases.

Plaintiffs attempt to distinguish the *Gapers* line of cases in two ways. First, they argue that the plaintiff in *Gapers* could not conduct its catering business without delivering its food, unlike Wal-Mart, which could choose to conduct online sales without shipping the purchased goods to customers, but instead requiring customer pickup. In this same vein, plaintiffs argue that Wal-Mart consumers could, in any event, choose to acquire their items at a brick-and-mortar Wal-Mart instead of using its online sales outlet, so there is no necessary link between the items and the shipping charges at issue. However, we are not concerned with hypothetical scenarios about how Wal-Mart could choose to conduct its online business; Wal-Mart in its current Web site setup has created a necessary link between online consumers' purchase of goods and purchase of shipping services, and as discussed above, that is sufficient to render those shipping charges subject to sales tax. See *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782; *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723; *Terrace Carpet*, 46 Ill. App. 3d at 91, 360 N.E.2d at 157. Nor is our analysis affected by the fact that the customer could have chosen another means of acquiring the goods at issue through an in-store purchase or through other distinctly separate sales operations. See *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723 (finding that services associated with vehicle sales were subject to tax even though vehicle purchasers could choose to obtain license and title by other means).

Second, plaintiffs state that in *Gapers* and *Terrace Carpet*, the service was being provided by the business being taxed – catering service bringing food, carpet retailer installing its carpet – while in the case at hand, Wal-Mart contracts out delivery services to a third party like

-12-

UPS, so it does not actually perform any delivery services itself. While this is certainly a factual distinction between the cases, it makes no difference as to the outcome. The factor that the court focused on in the *Gapers* and *Terrace Carpet* cases was the fact that the service came in a package with the goods being purchased – that is, it came as a single unit, not on an either-or basis – and the same is true of the shipping services in this case, regardless of whether the truck arriving at a customer's doorstep bears a Wal-Mart or a UPS label. It is the connection between service and sale that is dispositive under *Gapers* and its progeny, not the ultimate provider of the services.

Plaintiffs also argue that Wal-Mart's return policy supports a finding that the shipping charges are severable from the purchase price of the item: Russell alleged in his complaint that, when a Wal-Mart customer receives a refund on goods purchased online, the cost of shipping is not refundable unless the goods were damaged. However, this alone has no impact on the tax status of the shipping charges, which, in all likelihood, are not retrievable by Wal-Mart from the shipper once they have been paid. Wal-Mart's view of what constitutes the purchase price of the item, as reflected in its return policy, would not, in any event, suffice to control the legal status of the item's "selling price" for tax purposes. Rather, the legal status is controlled by the text of the ROTA and the Use Tax Act, and the body of law interpreting those statutes – and as discussed above, that law demonstrates for taxation purposes that there is an inseparable link between purchase of the goods and purchase of the shipping services at issue. See, *e.g.*, *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782.

Plaintiffs furthermore contend that shipping charges are not tangible personal property

No. 07-1341

and therefore cannot be made subject to tax under the plain text of the ROTA and Use Tax Act. See 35 ILCS 120/2 (West 2006); 35 ILCS 105/3 (West 2006) (describing the ROTA and Use Tax Act, respectively, as taxes on "tangible personal property"). In support, they cite *Farrand Coal Co. v. Halpin*, 10 Ill. 2d 507, 140 N.E.2d 698 (1957), in which the Illinois Supreme Court stated that "tangible" in the context of the ROTA meant " '[c]apable of being touched; also, perceptible to the touch; tactile; palpable' " and therefore did not apply to electrical energy produced from coal. *Farrand*, 10 Ill. 2d at 511, 140 N.E.2d at 700, quoting Webster's New International Dictionary, 2d ed. (1946). Plaintiffs contend that shipping charges are similarly intangible, so taxation is proper. However, this argument overlooks the fact that the shipping charges at issue in this case are inextricably linked with the sale of actual physical goods – specifically, a trampoline and a Leapfrog toy – so as to form part of the selling price of those goods under the ROTA and Use Tax Act. Making the entire selling price of such goods subject to sales tax does not violate the principle set out in *Farrand*; indeed, as discussed extensively above, there is ample case law in support of the proposition that services may be subject to sales tax to the extent that they are inseparably linked with sales of tangible goods. See *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782; *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723; *Terrace Carpet*, 46 Ill. App. 3d at 91, 360 N.E.2d at 157.

Plaintiffs contend that under the Department of Revenue's rules and regulations in the Illinois Administrative Code which interpret the ROTA and the Use Tax Act, shipping charges are not properly subject to sales tax. As shall be discussed below, we disagree with their interpretation of the applicable regulations, and in any event, such regulations would not be

-14-

binding upon us if they were in conflict with the statutory provisions that they purport to

implement. Where an agency is charged with the administration and enforcement of a statute,

courts will give deference to that agency's interpretation of ambiguous statutory provisions.

*Hadley*, 224 Ill. 2d at 370, 864 N.E.2d at 165. However, such interpretations are not binding

upon the courts. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03, 545

N.E.2d 695, 699 (1989). In addition, " '[a]dministrative rules can neither limit nor extend the

scope of a statute.' " *Van's Material*, 131 Ill. 2d at 203, 545 N.E.2d at 699, quoting *Du-Mont*

*Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48, 383 N.E.2d 197, 200 (1978).

Courts will not follow an agency interpretation that is in conflict with the statute, unreasonable,

or otherwise erroneous. *Hadley*, 224 Ill. 2d at 371, 376-80, 864 N.E.2d at 165, 168-170

(rejecting administrative rules adopted by the Illinois Department of Corrections because they

conflicted with the statutory language that they were supposed to reflect); *Gapers*, 13 Ill. App. 3d

at 202, 300 N.E.2d at 781.

Section 130.410 of Title 86 of the Code, entitled "Cost of Doing Business Not

Deductible," states that in computing liability under the ROTA, taxpayers may not take

deductions for "labor or service costs" or "any other expenses whatsoever"; it goes on to state

that "Costs of doing business are an element of the retailer's gross receipts subject to tax." 86 Ill.

Adm. Code § 130.410, amended at 24 Ill. Reg. 15104 (eff. October 2, 2000). However, the

section also states:

"[C]harges designated as 'shipping and handling' as well as delivery or transportation

charges in general, are not taxable if it can be shown that they are both separately

contracted for and that such charges are actually reflective of the costs of shipping. To the extent that shipping and handling charges exceed the costs of shipping, the charges are subject to tax." 86 Ill. Adm. Code § 130.410, amended at 24 Ill. Reg. 15104 (eff. October 2, 2000).

The Code also contains a section on "Transportation and Delivery Charges," which states that the tax status of outgoing shipping charges to customers

"depends not upon the separate billing of such transportation or delivery charges or expense, but upon whether the transportation or delivery charges are included in the selling price of the property which is sold or whether the seller and the buyer contract separately for such transportation or delivery charges by not including such charges in such selling price. In addition, charges for transportation and delivery must not exceed the costs of transportation or delivery. If those charges do exceed the cost of delivery or transportation, the excess amount is subject to tax." 86 Ill. Adm. Code § 130.415(b), amended at 24 Ill. Reg. 15104 (eff. October 2, 2000).

The section also states:

"If the seller and the buyer agree upon the transportation or delivery charges separately from the selling price of the tangible personal property which is sold, then the cost of the transportation or delivery service is not a part of the 'selling price' of the tangible personal property which is sold, but instead is a service charge, separately contracted for, and need not be included in the figure upon which the seller computes his Retailers' Occupation Tax liability. *Delivery charges are deemed to be agreed upon separately*

-16-

*from the selling price of the tangible personal property being sold so long as the seller requires a separate charge for delivery and so long as the charges designated as transportation or delivery or shipping and handling are actually reflective of the costs of such shipping, transportation or delivery. \*\*\* The best evidence that transportation or delivery charges were agreed to separately and apart from the selling price, is a separate and distinct contract for transportation or delivery. However, documentation which demonstrates that the purchaser had the option of taking delivery of the property, at the seller's location, for the agreed purchase price, or having delivery made by the seller for the agreed purchase price, plus an ascertained or ascertainable delivery charge, will suffice.*" (Emphasis added.) 86 Ill. Adm. Code § 130.415(d), amended at 24 Ill. Reg. 15104 (eff. October 2, 2000).

Plaintiffs first contend that under these administrative regulations as applied to the facts as alleged in their complaints, the agreement to pay shipping costs is a separate and distinct contract from the underlying contract for sale of goods, which renders these costs exempt from sales tax under the preceding Code provisions. They argue that Wal-Mart's shipping charge is separate from the charge for goods, in that it is separately itemized on the purchase receipt received by online customers, and that it actually reflects Wal-Mart's costs of shipping, so it satisfies the requirements of section 130.415(d) to be considered a separate contract. In addition to the fact that we are not bound by the administrative regulations, as stated above, these regulations do not demand a different line of analysis than we have already conducted in interpreting the statutory provisions. Even though the shipping charge may be listed as a discrete

-17-

quantity, it is not only paid for in the same credit card transaction, but such payment is a prerequisite to the transfer of ownership of the goods at issue, for the sale may not be consummated without such payment. In that sense, it is not at all separate from the purchase of goods, but, rather, inseparably linked with it, as has been discussed earlier. See *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782; *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723; *Terrace Carpet*, 46 Ill. App. 3d at 91, 360 N.E.2d at 157. Therefore, these shipping charges at issue are part of the same transaction as the purchase of the underlying goods and not entitled to be exempted from taxation under section 130.415(d).

In their brief, plaintiffs place heavy weight upon the final sentence of section 130.415(d). If the documentation requirement of this sentence is met, that is sufficient to demonstrate that the shipping charges are separate from the selling price of the items being delivered and are therefore not taxable. Plaintiffs interpret this sentence as stating that there are two separate and independent ways of satisfying the documentation requirement. First, the taxpayer can show that the purchaser had "the option of taking delivery of the property, at the seller's location, for the agreed purchase price"; alternately, the taxpayer can show that the taxpayer "ha[d] delivery made by the seller for the agreed purchase price, plus an ascertained or ascertainable delivery charge." 86 Ill. Adm. Code § 130.415(d), amended at 24 Ill. Reg. 15104 (eff. October 2, 2000). Plaintiffs argue that they have alleged facts sufficient to support the second condition, if not the first, and that, they say, is enough under this section. Defendants, on the other hand, urge a different reading of this sentence. They contend that in order to prevail under this section, the taxpayer must be able to show that the purchaser had the option of choosing either of the two alternatives;

-18-

that is, the presence of one condition or the other, without the option to select between them, is inadequate. Under such an interpretation, plaintiffs cannot prevail under this section, as they have alleged no facts that would indicate that purchasers have such an option; rather, they only allege the existence of the second alternative, which has no independent viability.

The crucial difference between these two interpretations hinges upon the use of the word "option." The word "option" necessarily requires the presence of multiple alternatives that one can choose between, or else no genuine option exists. Plaintiffs have failed to adequately account for this word in their interpretation of the sentence. They read the word "option" as applying only to the first clause ("taking delivery of the property, at the seller's location, for the agreed purchase price"); however, as this clause only describes a single alternative, it raises the question as to wherein the option lies. Either plaintiffs are ignoring the word "option" in their interpretation, rendering it superfluous text, or they are presuming the existence of alternative choices within the first clause, subsumed within the clause but not explicitly spelled out. Such an interpretation is awkward at best. Defendants' interpretation, by contrast, makes the word "option" the linchpin of the documentation requirement: the "option" at issue is an option between the two alternatives expressly laid out in the remaining portion of the sentence. Under defendants' interpretation, to evidence nontaxability under this sentence would require a showing that the purchaser had a choice between picking up the merchandise at the seller's location or having it shipped with an ascertainable delivery charge. Documentation that merely showed the latter would not suffice under this regulation to prove a separate contract so as to avoid the imposition of sales tax. As this interpretation makes better use of the language of the regulation,

we find it to be contextually more correct on its face.

Moreover, defendants' reading is more in line with the *Gapers* line of cases than plaintiffs' reading: if consumers may take delivery of products at retailers' places of business, then that would weigh against the presence of an inseparable link. Additionally, the Code itself states that the fact that shipping charges may be separately billed is not dispositive. 86 Ill. Adm. Code § 130.415(b), amended at 24 Ill. Reg. 15104 (eff. October 2, 2000). Plaintiffs' reading of section 130.415(d) would seem to contradict that statement, in spirit if not in strict logic, by placing an inordinate amount of weight on the separately ascertainable nature of the shipping charges at issue. See *Quality Saw & Seal*, 374 Ill. App. 3d at 783, 871 N.E.2d at 267 (statute must be read as a whole). Thus, plaintiffs' reliance on the fact that the shipping charges were ascertainable apart from the price of the item is misplaced.

Plaintiffs additionally contend that their position is supported by various private letter rulings and general information letters issued by the Department of Revenue in response to inquiries about tax liability. Specifically, they cite letters regarding the tax status of mail-order delivery charges which they argue are analogous to the online delivery charges incurred by Wal-Mart shoppers in the instant case. Yet as plaintiffs concede in their brief, such letters have no precedential value and are not binding upon us, although they may be considered instructive in understanding how the regulatory authority interprets the statute at issue. *Subway Restaurants of Bloomington-Normal, Inc. v. Topinka*, 322 Ill. App. 3d 376, 385, 751 N.E.2d 203, 211 (2001), citing *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 400, 556 N.E.2d 236, 243 (1990). Therefore, they are insufficient to override the language of the statute itself and the

significant body of precedent that finds shipping charges taxable to the extent that they are inseparably linked with the sale of goods. See *Gapers*, 13 Ill. App. 3d at 203, 300 N.E.2d at 782; *Velde Ford Sales*, 136 Ill. App. 3d at 592, 483 N.E.2d at 723; *Terrace Carpet*, 46 Ill. App. 3d at 91, 360 N.E.2d at 157.

Furthermore, even to the extent that such letters might be persuasive, such persuasive power does not entirely weigh in favor of plaintiffs. Defendants cite an April 19, 2006, general information letter (ST 06-0069-GIL) in which the Department of Revenue states that shipping charges incurred by store managers purchasing goods are taxable as part of the selling price of such goods. The letter states that the store managers purchase goods in one of two ways. First, they can place phone orders with a vendor; at the time they make the order, they are quoted only the price of the products being purchased, and shipping charges are not addressed. Second, they can place orders on the vendor's Web site, in which case the confirmation message they receive contains only the cost of the products plus a message stating that shipping costs will be communicated prior to shipment. After reiterating the text of section 130.415(d), the Department of Revenue declared that the shipping costs were taxable in both cases, citing the following facts by way of explanation: "It appears that the shipping charges are in fact not separately contracted for between the store managers and the seller. In addition, your request references the fact that the store managers do not have the option of picking up the merchandise at the seller's location." Both of these factors are also present in the case at hand, indicating that the trial court's ruling on the taxation issue is in line with the Department of Revenue's interpretation of the law.

If, upon such facts, the Department of Revenue still found that the shipping charges and

the cost of the goods were not separately contracted for, then it is also, if not all the more true in the present case, where charges for both merchandise and shipping are agreed to in a single click of the mouse.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

O'MALLEY, P.J., and CAHILL, J., concur.

No. 07-1341

| | REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please use the following form | Nancy Kean, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff-Appellant,<br>v.<br><br>Wal-Mart Stores, Inc., Wal-Mart.com, U.S.A., LLC, and Wal-Mart Associates, Inc.,<br><br>Defendants-Appellees<br><br>(Chip Russell, Individually and on Behalf of All Others Similarly Situated,<br><br>Intervenor and Plaintiff-Appellant;<br><br>The Department of Revenue and Alexi Giannoulias as Treasurer of the State of Illinois,<br><br>Intervenors and Defendants-Appellees). |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-07-1341<br><br>Appellate Court of Illinois<br>First District, SIXTH Division<br><br>November 21, 2008<br>(Give month, day and year) |
| <br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br>   O'Malley, P.J., and Cahill, J.   , concur. |
| APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon.   Philip L. Bronstein   Judge Presiding. |
| <br><br><br><br><br>APPELLANTS:<br>John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br>APPELLANTS: Aron D. Robinson, Law Office of Aron D. Robinson, 19 South LaSalle, Suite 1300, Chicago, Illinois 60603; Lance A. Raphael, The Consumer Advocacy Center, P.C., 180 West Washington, Suite 700, Chicago, Illinois 60602 |
| For APPELLEES, Smith and Smith of Chicago | APPELLEES: Arthur M. Scheller, III, and Steven D. Hamilton, Drinker Biddle & Reath LLP, 191 North Wacker Drive, Suite 3700, Chicago, Illinois 60606 |

| Add attorneys for 3rd party appellants and/or appellees. | INTERVENORS AND DEFENDANTS-APPELLEES: Lisa Madigan, Michael A. Scodro, and Brett E. Legner, 100 W. Randolph Street, 12th Floor, Chicago, Illinois 60601 |
|---|---|